Elizabeth MARCUCCILLI, et
al., Appellants–Plaintiffs,

v.

KEN CORPORATION, et al.,
Appellees–Defendants.

Elizabeth Marcuccilli, et al.,
Appellants–Plaintiffs,

v.

Hi Way Drive–In Theatre, Inc., et
al., Appellees–Defendants.

No. 27A02–0105–CV–266.

Court of Appeals of Indiana.

April 22, 2002.

Casey D. Cloyd, John H. Brooke, Brooke & Cloyd, Muncie, IN, Attorneys for Appellants.

O. Wayne Davis, B. Keith Shake, Debra A. Mastrian, Henderson, Daily, Withrow & DeVoe, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

In this consolidated appeal,[1] appellants-plaintiffs Elizabeth Marcuccilli *et al.* (collectively referred to as the minority shareholders) appeal the trial court's dismissal of their amended complaints against the appellees-defendants Hi–Way Drive–In Theatre, Inc., *et al.* (Hi–Way) and Ken Corporation (Ken Corp.), *et al.*

Specifically, the minority shareholders contend that dismissal was improper because the trial court erroneously determined that they were precluded from maintaining direct actions against the shareholder-appellees for various breaches of fiduciary duties in these closely-held corporations. The minority shareholders further maintain that they should have been permitted to proceed with certain derivative claims against the appellees under count two of their complaints.

## FACTS

In 1994, Hi–Way, an Indiana corporation engaged in real estate development, sold an 18.73–acre tract of land in Grant County to Lowe's and Kite Development for $200,000. Lowe's proceeded to buy a nearby parcel of land and then traded that tract in a like-kind exchange with the Ralph Marcuccilli Trust. Star Financial Bank, in turn, leased the tract from the trust to build a new bank branch.

James and Thomas Marcuccilli were the dominant and controlling shareholders, officers and directors of Hi–Way. Moreover, they held the same shareholder, officer and director positions in Ken Corporation, also an Indiana corporation.

The Minority shareholders, Elizabeth Marcuccilli, Robert Marcuccilli, Judith Marcuccilli Stanley and Patricia Marcuccilli Stalker, are beneficiaries of the Ralph Marcuccilli Trust. V. Edgar Stanley II, Robert Marcuccilli and Stephen Stalker are co-trustees of that testamentary trust. The Marcuccilli Trust was a minority shareholder in both corporations.

James and Thomas eventually informed the Hi–Way minority shareholders that the corporation's parcel of land was sold to Lowe's for $200,000. However, neither James nor Thomas purportedly disclosed the remainder of the overall transaction terms, which could have resulted in compensation to other shareholders in an amount exceeding $500,000.

The minority shareholders alleged that since 1991, Ken Corp. had loaned James and Thomas money from the corporation on an annual basis. Those loans were purportedly extended to James and Thomas at an interest rate below the then-prevailing market rate. They eventually repaid the loans with the agreed-upon interest, although the loan transactions were never disclosed to the minority shareholders.

As a result of these activities, on November 18, 1997, the minority shareholders filed amended complaints[2] against Hi–Way and Ken Corp., seeking declaratory relief and damages. This was the second amended complaint filed against Hi–Way and the first with respect to the claims brought against Ken Corp.

As to the action against Ken Corp., the allegation in Count I maintained that James, Thomas and other defendants

---

1. On September 11, 2001, this court ordered a consolidation of two Grant County Superior Court cases: *Elizabeth Marcuccilli, et. al v. Ken Corp., et. al;* and *Elizabeth Marcuccilli et al. v. Hi–Way Drive–In Theatre, Inc., et al.*

2. The trial court granted a previous motion to dismiss the complaint on November 5, 1997.

breached their fiduciary duties to deal fairly and honestly with Ken Corp. and its remaining shareholders. The contention was made that many of the transactions involving that corporation had been concealed from the minority shareholders. As a result, the minority shareholders sought a declaratory judgment and an order from the trial court requesting, among other things, that James, Thomas, and all other defendants, be held to act as constructive trustees over profits, enrichments and properties that had been acquired in the transactions. The minority shareholders also requested punitive damages and asked that injunctive relief be granted against the defendants. Appellants' App. at 85.

Count II of the amended complaints, entitled, "Claim for Relief Minority Shareholder Derivative Action," also alleged breach of fiduciary duties on the part of James, Thomas and other defendants. Appellant's App. at 88, 245. The minority shareholders requested that Thomas and James be removed from the corporation and that judgment be awarded to Ken Corp. for compensatory damages, punitive damages and attorney's fees. They also requested an injunction and the appointment of an accounting firm to conduct an independent audit of Ken Corp. and the Marcuccilli Trust. Appellant's App. at 96–98.

As to the amended complaint filed by the minority shareholders against Thomas, James and the other defendants with respect to Hi–Way, it was maintained that except for the purchase price of $200,000 by Lowe's from Hi–Way of the 18.73 acres, all other "deal principles, parties and considerations relating to or arising from the Lowe's Deal" were concealed from them. Appellant's App. at 238. Thus, the minority shareholders asserted that such failures to disclose amounted to a breach of fiduciary

duty to Hi–Way's shareholders. It was urged that those failures resulted in an unfairly low amount with regard to Hi–Way's real estate, thereby allowing more to be allocated to the other defendants that resulted in direct and indirect benefits to them. As a result, the minority shareholders requested relief similar to that requested in their action against Ken Corp.

On December 31, 1997, Hi–Way and Ken Corp. filed a motion to dismiss Counts I and II as to each of the amended complaints. Appellant's App. at 108, 269. They alleged that the plaintiffs, as beneficiaries of the Ralph Marcuccilli Trust, which trust is a shareholder of Ken Corp., improperly pled the case as if it were a direct action brought by the shareholders. Thus, they alleged that the minority shareholders were prohibited from maintaining an action in their individual capacities to redress those wrongs that affected the corporations. Appellant's App. at 109.

After hearing arguments on the motions, the trial court dismissed Count I on each of the amended complaints on December 7, 1998. In the orders of dismissal, the trial court noted the general rule that "shareholders are generally required to vindicate their rights in a single derivative action against the corporation." Appellant's App. at 222. It went on to note that the appellants failed to establish any exception to this rule. Appellant's App. at 222. As to Count II of the complaint, the trial judge concluded that the minority shareholders' derivative action could proceed. Thus, it stayed the proceeding for ninety days pending the report of a special litigation committee (committee) that was appointed to consider the merit and validity of the claims.

In each case, the committee ultimately reported that James and Thomas had violated certain fiduciary duties to the corporations. The committees recommended,

however, that it was not in the best interests of Ken Corp. or Hi–Way to pursue the pending actions.

With respect to Hi–Way, the committee determined that even though the individual defendants had a conflict of interest and did not disclose material facts to Hi–Way's directors, officers and shareholders, the allocation of $200,000 to Hi–Way was fair to the corporation, and, thus, it was without any legal or equitable right or remedy. As to Ken Corp., the committee determined that the individual defendants violated their fiduciary duties by failing to make full disclosure regarding certain insider loans, that Ken Corp. had a legal or equitable right or remedy, but that it was within the corporation's best interest to dismiss the pending action because it had not sustained any damages. Appellants' App. at 170–72. Specifically, the committee determined that Ken Corp. had actually benefited from those "insider" loans. Appellant's App. at 171. Thus, the committee recommended that the claims under Count II be dismissed. Appellants' App. at 171–72, 339. After hearing arguments on these claims, the trial court dismissed Count II of each amended complaint on March 27, 2001. The minority shareholders now appeal the orders of dismissal in both cases.

### DISCUSSION AND DECISION

#### I. Standard of Review

 The basic purpose of a motion to dismiss in accordance with Ind. Trial Rule 12(B)(6) is to test the legal sufficiency of the complaint to state a redressable claim. *Am. Dry Cleaning & Laundry v. State*, 725 N.E.2d 96, 98 (Ind.Ct.App.2000). A T.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Id.* In determining whether to dismiss a com-

plaint for failure to state a claim, the facts, as alleged in the complaint, must be taken as true. *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 833 (Ind.Ct.App.1995). The complaint may not be dismissed unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. *Donahue v. St. Joseph County ex rel. Bd. of Comm'rs of St. Joseph County*, 720 N.E.2d 1236, 1239 (Ind. Ct.App.1999). A trial court must review the complaint in a light most favorable to the non-moving party and with every intendment in the non-moving party's favor. *Id.* A complaint is sufficient if it states any set of allegations, no matter how inartfully pleaded, upon which the trial court could have granted relief. *Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572, 575 (Ind.Ct.App. 1993).

#### II. Dismissal of Count I

The minority shareholders first argue that the trial court erred in dismissing count I of their complaints against Thomas, James and the other defendants. Specifically, the minority shareholders assert that the claims advanced in the counts against Ken Corp. and Hi–Way were personal to them and, therefore, they were entitled to damages for their injuries.

 In resolving this issue, we first note that shareholders in a close corporation stand in a fiduciary relationship to each other. *Barth v. Barth*, 659 N.E.2d 559, 560 (Ind.1995). That is, the shareholders have an obligation to deal fairly, honestly and openly with the corporation as well as their fellow shareholders. *W & W Equip. Co. v. Mink*, 568 N.E.2d 564, 570 (Ind.Ct.App.1991), *trans. denied.* In *Barth*, our supreme court determined that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation

even if the value of their stock is impaired as a result of the injury. *Id.* Rather, the shareholder is required to maintain a derivative action seeking redress of the injury. *Id.* In noting an exception, however, the *Barth* court determined that a personal cause of action may arise when there is a breach of duty owed specially to the shareholder separate and distinct from the duty owed to the corporation. *Id.* at 563 n. 4.

◼ Our supreme court has defined a direct action as one that is initiated by a shareholder on his own behalf to vindicate rights belonging to the shareholders themselves. *G & N Aircraft, Inc. v. Boehm,* 743 N.E.2d 227, 234 (Ind.2001). Direct actions are typically initiated to enforce a right to vote, compel dividends, prevent oppression or fraud against minority shareholders, inspect corporate books and to compel shareholder meetings. *Id.* In contrast, derivative actions are those that are asserted by a shareholder on the corporation's behalf against a third party because of the corporation's failure to take some action against a third party. *Id.* Thus, shareholders are generally precluded from maintaining an action in their own name to redress an injury to the corporation. *Mink,* 568 N.E.2d at 570–71.

While these are the general rules, we observed in *Mink* that a derivative action was not necessary there because the following circumstances existed: 1) the corporation had only two shareholders; 2) the plaintiff was the only injured shareholder; 3) there was no potential for a multiplicity of shareholder suits; 4) there was no evidence for a need for credit protection; 5) there was no potential for prejudice to other shareholders; and 6) the plaintiff

would not be adequately compensated by the corporate recovery because the corporation was a close corporation with no ready market for the sale of the plaintiff's shares of stock. *Id.* at 571.

◼ Additionally, we quote from *G & N:* The rights of a shareholder may be derived from the articles of incorporation and bylaws, state corporate law or agreements among the shareholders or between the corporation and its shareholders. [Citation omitted]. If none of these establishes a right in the shareholders to the requested relief, the claim, if it exists at all, must be brought on behalf of the corporation in a derivative action.

*G & N Aircraft,* 743 N.E.2d at 235.

Turning to the arguments presented here, we note that the minority shareholders rely extensively upon our supreme court's decision in *Barth v. Barth,* 659 N.E.2d 559 (Ind.1995) (*Barth II* ),[3] in support of their contention that the trial court erred in dismissing Count I of their amended complaints. In the *Barth* action, a minority shareholder proceeded against Barth Electric Company (the company) in an individual capacity. *Id.* at 560. The shareholder asserted that the president, who was the majority shareholder, had: 1) paid excessive salaries to himself and other family members; 2) used corporate employees to perform services for him and other family members without proper compensation to the company; 3) dramatically lowered dividend payments; and 4) appropriated company funds for personal investments. *Id.* Thereafter, the company and majority shareholder moved to dismiss the complaint pursuant to T.R. 12(B)(6),

---

**3.** In *Barth I,* (*Barth v. Barth*) 651 N.E.2d 291 (Ind.Ct.App.1995), we reversed the trial court's original dismissal of the shareholder's complaint against the closely held corpora-

tion and its majority shareholder that was brought as a direct action which alleged a breach of fiduciary duty.

arguing that the minority shareholder was required to bring a derivative action rather than a direct claim. *Id.*

In deciding this case, our supreme court noted the exception with close corporations when determining whether an action may proceed by a direct or derivative action, and remanded the cause to the trial court for reconsideration of the trial court's dismissal of the action. In the end, we affirmed the trial court's dismissal of the complaint in *Barth III*. *Barth v. Barth*, 693 N.E.2d 954 (Ind.Ct.App.1998), *trans. denied.* In arriving at this result, we set forth our supreme court's announcement of the rule for determining when a shareholder of a closely-held corporation may raise a derivative claim in a direct action rather than a derivative action:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Barth III*, 693 N.E.2d at 958 (quoting A.L.I., *Principles of Corporate Governance* § 7.01(d)). Applying the principles above, we determined that the minority shareholder could not bring a direct action against the corporation because: 1) the third shareholder had not been joined and had not intervened in the minority shareholder's action against the majority shareholder; 2) a direct action could unfairly expose the majority shareholder and corporation to a multiplicity of actions arising from the same matters alleged in the minority shareholders' complaint because the third shareholder would probably not be bound in the present action; 3) creditors would be prejudiced if the minority shareholder were permitted to pursue a direct claim or if the corporation would be dissolved as a result of the action; and 4) a direct action would interfere with fair distribution of recovery among the shareholders because the third shareholder would not share in the damages. *Id.* at 958–59.

Turning to the allegations set forth in Count I of the amended complaints here, it is apparent that the minority shareholders have brought the action in their individual capacities through a direct action based on the breach of fiduciary duty by the individual defendants. They alleged that James and Thomas engaged in self-dealing as officers, directors and shareholders of Ken Corp. and Hi–Way, as well as collusion and acquiescence in those activities. Specifically, these allegations raised and pled by the minority shareholders pertain to the alleged damage suffered by the corporations as entities rather than to the plaintiff shareholders individually.

The complaints alleged that the individual defendants were acting for their own benefit and not for the benefit of Ken Corp. or Hi–Way and to the corporations' detriment. They further maintained that the officers, directors and dominant shareholders breached their fiduciary duties that resulted in injury to the corporations.

More specifically, Count I of the amended complaint regarding the Hi–Way case relates to the sale of Hi–Way's 18.8 acres and certain real estate of the other defendants to Kite Corporation. The essence of the shareholders' claim is that the individual defendants, in their negotiation with Kite Corporation, allocated an unfairly low amount to the purchase price of Hi–Way's 18.8 acres. Thus, a greater amount of the

purchase price inured to the benefit of the other defendants for their other properties. In essence, those claims are similar to the ones presented in *Barth,* which were categorized as misuse of corporate assets. There is no indication that the minority shareholders' claims involved a breach of a duty owed especially to the minority plaintiff shareholders, separate and distinct from the duties owed to Hi–Way and its other shareholders.

The same holds true with respect to the action against Ken Corp. Count I there relates to the corporation's loaning of its reserves to directors and/or their related business entities. The alleged damage was to the corporation itself because of the misuse of corporate assets. The minority shareholders' claims do not involve a breach of duty to the plaintiff shareholders, separate and distinct from duties owed to the corporation and its other shareholders. Thus, we cannot say that the trial court's dismissal of Count I in the amended complaints ran afoul of the pronouncements made in *Barth II* and *III.*

We proceed to distinguish the circumstances here from those in *G & N Aircraft,* where our supreme court had the occasion to once again discuss the differences between direct and derivative actions and breaches of a fiduciary duty by a majority shareholder in a close corporation. 743 N.E.2d 227. In that case, the plaintiff shareholder alleged that the president and/or majority shareholder of G & N provided advantages to his other corporations that did not benefit G & N, refused to find a different location for G & N because of a conflicted position he held as a landlord, chose improper accounting and tax policies, attempted to combine G & N

with his other businesses without benefiting that corporation, transferred corporate assets for personal benefit, and breached various other fiduciary duties. *Id.* at 236.

Our supreme court accepted transfer of the case from the decision of this court [4] and determined that *some* of these claims amounted to direct actions. *Id.* at 237–38. However, we cannot say that the claims here do not relate to breaches of fiduciary duty separate and distinct from the duties owed the other shareholders of the corporations. The minority shareholders made no attempt to plead any of the policy considerations that would favor a direct, rather than a derivative action. Permitting the plaintiffs to proceed with this litigation as a direct action could certainly encourage multiple litigation by other shareholders and would effectively disregard the corporate entity. Therefore, we conclude that the trial court properly dismissed the minority shareholders' claims in Count I of the amended complaint.

## II. Count II—Derivative Claims

The minority shareholders next contend that the trial court erred in dismissing Count II of the amended complaints because they contained valid derivative claims. They also contend it was error to dismiss those counts because the corporations failed to designate evidence to satisfy the burden that they were entitled to summary judgment.[5] Further, the minority shareholders maintain that the evidence the trial court did consider about the special litigation committee members' disinterestedness and good faith provided conflicting inferences "that should have precluded summary judgment." Appellant's brief at 12.

---

4. *See G & N Aircraft, Inc. v. Boehm,* 703 N.E.2d 665 (Ind.Ct.App.1998); *trans. granted,* 735 N.E.2d 227 (Ind.2000).

5. We note that the request was made for a dismissal, or alternatively, summary judgment.

In accordance with our corporation committee statute, IND. CODE § 23–1–32–4(c), the relevant provisions here state:

(c) If the committee determines that pursuit of a right or remedy through a derivative proceeding or otherwise is not in the best interests of the corporation, *the merits of that determination shall be presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding with respect to such right or remedy, unless such shareholder can demonstrate that:*

(1) *the committee was not "disinterested" within the meaning of this section; or*

(2) *the committee's determination was not made after an investigation conducted in good faith.*

(Emphasis supplied).

▪▪ In construing this statute, we determined in *Cutshall v. Barker,* 733 N.E.2d 973, 978 (Ind.Ct.App.2000), that the plaintiff shareholders bear the burden of *proving* that the committee was not "disinterested" or did not conduct its investigations in good faith. More specifically, a plaintiff challenging the good faith of a special litigation committee investigation "must prove that the ... investigation was 'so restricted in scope, so shallow in execution, or otherwise so *pro forma* or half-hearted as to constitute a pretext or sham.'" *Id.* at 982 (quoting *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1003 (1979)).

Here, the committee concluded that the action involving Ken Corp. should be dismissed because the corporation suffered no damages. It also determined that the Hi–Way action should be dismissed because the challenged allocation was fair to it and thus, the corporation had no equitable or legal right or remedy to assert. Appellant's App. at 170–172. Following the committee's report, the trial court is-

sued an order on December 16, 1999, providing that unless a challenge was made to the reports within thirty days, the actions would be dismissed. Appellant's App. at 1–2, 22–23, 224–25.

It was not until January 18, 2000, that the minority shareholders filed their unverified objections to the reports. Ken Corp. and Hi–Way then requested the trial court to dismiss the action or, alternatively, enter summary judgment in their favor. Appellants' App. at 176–189, 345–359. In the order of dismissal, the trial court found that the objections to the committee reports were untimely and unverified. It was also noted that the decisions of the committee were presumed conclusive. Appellants' App. at 22–24, 224–25.

Notwithstanding the trial court's conclusion, the minority shareholders assert that they can prevail upon their claim because the various members of the committee were not "disinterested" within the meaning of the committee statute. Specifically, the minority shareholders point out that two members of the committee for Hi–Way are shareholders of that corporation and State Financial Bank. Additionally, they argue that those shareholders, officers or directors are the individual defendants and that all members of the Ken Corp. committee are shareholders of that corporation, Hi–Way and Star Financial Bank.

To resolve this contention, we turn to another section of our committee statute, I.C. § 23–1–32–4(d), which sets forth the definition of "disinterested:"

For purposes of this section, a director or other person is "disinterested" if the director or other person:

(1) Has not been made a party to a derivative proceeding seeking to assert the right or remedy in question, or has been made a party but only on the basis of a frivolous or insubstantial claim or

for the sole purpose of seeking to disqualify the director or other person from serving on the committee;

(2) Is able under the circumstance to render a determination in the best interests of the corporation; and

(3) Is not an officer, employee, or agent of the corporation or of a related corporation. However, an officer, employee, or agent of the corporation or a related corporation who meets the standards of subdivisions (1) and (2) shall be considered disinterested in any case in which the right or remedy under scrutiny is not assertable against a director or officer of the corporation or the related corporation.

While the minority shareholders assert that reasonable inferences exist that neither of the committees were disinterested or acted in good faith in accordance with this statute, we note that the various depositions upon which they rely were never designated to the trial court. As a result, the evidence that could be gleaned from those depositions and any inferences arising from them is not properly before the trial court. Moreover, the depositions are not properly before us on appeal. *See Jackson v. Blanchard,* 601 N.E.2d 411, 415 (Ind.Ct.App.1992) (observing that the reviewing court may not look to places in the record unless properly designated to the trial court).

On the other hand, the individual defendants, Ken Corp. and Hi–Way, all submitted affidavits establishing that the committees were formed, that independent counsel was retained to advise the committees and that the committees ultimately determined that it was not in the best interest of Ken Corp. or Hi–Way to pursue any right or remedy. Appellants' App. at 163–64, 167, 195–96, 322. The committee reports were filed and designated to the trial court in their entirety. Appellants' App. at 163–76. Thus, the trial court properly determined that the minority shareholders had not submitted any evidence demonstrating that the committee was not disinterested or failed to act in good faith in accordance with the statute. As a result, there was no error.[6]

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court properly dismissed Count I of the amended complaints inasmuch as the minority shareholders should have asserted their rights in a single derivative action against the corporation. In essence, the minority shareholders failed to plead any exception to this general rule that might have otherwise enabled them to maintain a direct action. We further conclude that the trial court properly dismissed the derivative actions against the corporations as alleged in count II of the complaints. The minority shareholders failed to satisfy their burden of proof that any of the committee members were not disinterested or did not conduct their investigations in good faith.

Affirmed.

NAJAM, J., and MATTINGLY–MAY, J., concur.

---

**6.** While the trial court pointed out that the minority shareholders did not file their objection to the reports in a timely fashion, we note that Ind.Trial Rule 6(a) provides that the time for objecting should begin to run the day after the order was made. Thus, the thirty-day limit commenced on December 17. The 30th day fell on Saturday, January 15, 2000. The next day was a Sunday, followed by Martin Luther King, Jr. Day, which is a legal holiday pursuant to IND. CODE § 1–1–9–1. As a result, the expiration of the time limit was on January 18, 2000.