# FOR PUBLICATION



**FILED**

Sep 03 2013, 5:34 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT/
INTERVENOR, TP ORTHODONTICS:

**SEAN M. CLAPP**
**ELIZABETH M. ELLIS**
Clapp Ferrucci
Fishers, Indiana

ATTORNEYS FOR APPELLEE
ANDREW C. KESLING:

**THOMAS G. BURROUGHS**
**MICHAEL W. HILE**
Katz & Korin, PC
Indianapolis, Indiana

ATTORNEYS FOR JOINT APPELLEES
CHRISTOPHER K. KESLING, DDS, MS,
ADAM KESLING AND EMILY KESLING:

**ROBERT W. WRIGHT**
Dean-Webster Wright LLP
Indianapolis, Indiana

**SHAW R. FRIEDMAN**
Friedman & Associates, P.C.
LaPorte, Indiana

**JOHN A. CONWAY**
**JOHN A. DRAKE**
Ladue Curran & Kuehn LLC
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TP ORTHODONTICS, INC., | ) |
| | ) |
| Appellant-Intervenor, | ) |
| | ) |
| | ) |
| CHRISTOPHER K. KESLING, DDS, MS, | ) |
| ADAM KESLING, and EMILY KESLING, | ) |
| Individually and derivatively on behalf of | ) |
| TP ORTHODONTICS, INC., | ) |
| | ) |

Plaintiffs-Appellees,                              )
                                                   )
        vs.                                        )
                                                   )     No. 46A03-1207-MI-324
ANDREW C. KESLING, individually                    )
and as TRUSTEE OF THE ANDREW                       )
C. KESLING TRUST DATED MARCH                       )
28, 2001, and THE ANDREW C. KESLING                )
TRUST DATED MARCH 28, 2001,                        )
                                                   )
        Defendants-Appellees.                      )

---

INTERLOCUTORY APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Richard R. Stalbrink, Jr., Judge
Cause No. 46D02-1001-MI-15

---

**September 3, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

In 2010, three sibling shareholders, Christopher, Adam, and Emily Kesling ("the siblings"), filed suit against their brother, Andrew Kesling, on behalf of the family business, TP Orthodontics ("TPO"). In response, TPO's board of directors established a special litigation committee to determine whether to pursue the siblings' derivative claims against Andrew, the president of TPO. After an investigation, the committee issued a written report in which it recommended pursuing some of the siblings' claims but not others. If a special litigation committee rejects derivative plaintiffs' claims, Indiana law requires that those claims be dismissed, provided that the committee was disinterested and acted in good faith in reaching its decision. In accordance with Indiana law, TPO filed a motion to dismiss the rejected claims and attached a heavily redacted

2

copy of the committee's report. The siblings demanded access to the unredacted report, but TPO refused to produce it. The trial court ultimately ordered TPO to produce the report, and this interlocutory appeal followed.

The issue before us is whether a corporation must give derivative plaintiffs access to the report that the corporation relies on when seeking dismissal of the plaintiffs' claims. We conclude that the corporation's arguments against production are outweighed by basic considerations of necessity and fairness. Derivative plaintiffs must show that the special litigation committee was not disinterested or did not act in good faith in order to survive a corporation's motion to dismiss. The best evidence of whether the committee acted in good faith is the committee's report explaining how it so acted. Not only do derivative plaintiffs need the report in order to challenge the committee's good faith, our trial-court judges need this report to make informed decisions.

We acknowledge that attorney-client privilege will undoubtedly infiltrate many of these reports; indeed, it is entirely conceivable that part of any special litigation committee's reasoning for rejecting a claim will be based on counsel's advice that a claim is unlikely to succeed on the merits or too costly given the prospects of success. And in such a case, the very reason that the committee acted in good faith is because of an attorney's advice. Thus, we find that where a corporation forms a special litigation committee, and the corporation later requests dismissal of derivative plaintiffs' claims based on the findings of that committee, privilege as to the committee's report is waived. We affirm the trial court's order compelling production of the special litigation committee report and remand for further proceedings.

**Facts and Procedural History**

In 2010, the siblings filed a complaint against their brother Andrew in LaPorte Superior Court on behalf of the family business, TPO. Although TPO is based in Indiana, the privately held company manufactures and distributes orthodontic products around the world. Collectively, the siblings own 11% of TPO voting stock and Andrew owns 51%. Andrew is the president of TPO.

In their complaint, the siblings alleged that Andrew had acted wrongfully in a number of ways, such as exchanging currency at a loss to the company, failing in corporate governance—specifically, failing to implement counseling or sensitivity training at TPO, which resulted in several sexual-harassment claims and litigation— improperly charging travel and entertainment expenses to TPO, taking improper advances on royalty and patent payments, and using TPO funds for personal expenses. The siblings claimed that Andrew's actions caused economic loss to the company and its shareholders.

Andrew sought to stay the litigation and appoint a committee to determine whether litigation on behalf of TPO was in the corporation's best interests, and TPO filed a motion to intervene. The trial court granted both motions. In July, TPO's board of directors established a special litigation committee ("the committee") to investigate the siblings' allegations. TPO also retained the Indianapolis-based law firm of Wooden & McLaughlin LLP to assist the committee with its investigation. Over the next year, the three-member committee met thirty times, reviewed approximately 10,000 pages of categorized documents, and conducted over forty interviews with employees and others

4

involved with TPO. In August 2011, the committee completed its Special Litigation Committee Report ("the report"), which is the subject of this litigation. *See* Appellant's App. p. 357-86.[1] The report was authored by the committee members, none of whom are attorneys, with assistance from Wooden & McLaughlin counsel. *Id.* at 357.

Only TPO directors were allowed to see the report.[2] In the report, the committee concluded that TPO should pursue only a few of the siblings' claims against Andrew; specifically, the claims related to patent and royalty payments and corporate governance. The committee concluded that it was not in TPO's best interests to pursue the other claims.

Shortly after the report was completed, TPO filed a motion to dismiss the rejected claims and filed a copy of the report, along with related exhibits, under seal. The entire report consists of a cover page, four table-of-contents pages, a 139-page report, and a signature page. But in the copy TPO attached to its motion, more than 100 pages were redacted. An affirmation attached to the report, signed by James Hutton, TPO's secretary, states that the report was redacted to "prevent disclosure of attorney-client privileged information and attorney work product prepared in anticipation of litigation . . . ." *Id.* at 181-83. The unredacted pages describe TPO's creation and operation, *id*. at 361-66, the professional background of each committee member, *id.* at 366-68, and

---

[1] The report spans only twenty-nine pages in the record because the redacted pages are reflected on a single page. *See* Appellant's App. p. 387 (page reads "Pages 25 through 107 Redacted").

[2] TPO states that only the board of directors received the report, with the exception of Andrew, who was not permitted to see the document. The siblings argue that there is no proof of either fact, but we need not belabor this point. What matters is that the siblings do not have access to the report.

investigation procedure, *id.* at 369-73. The report also identifies the claims that the committee approved and those it rejected. *Id.* at 374-77, 381-83, 385.

A few days later, the siblings filed a motion to compel TPO to produce the entire, unredacted report, and the trial court heard arguments on the motion. The siblings argued that in practice, a special litigation committee's report is regularly provided to plaintiffs, citing two Indiana cases, *Cutshall v. Barker*, 733 N.E.2d 973 (Ind. Ct. App. 2000), and *Marcuccilli v. Ken Corp.*, 766 N.E.2d 444 (Ind. Ct. App. 2002), *reh'g denied*, for support. Tr. p. 8. The siblings claimed that without the unredacted report, they were "dealing with a blank slate," making it impossible to respond to TPO's motion to dismiss. *Id.* They said that they were unable to challenge the committee's good-faith investigation or its disinterestedness—the sole grounds for challenging a special litigation committee's conclusions under Indiana law. In support of their claim that TPO should be required to produce the unredacted report, the siblings relied on a federal case interpreting Michigan law, *In re Perrigo*, 128 F.3d 430 (6th Cir. 1997). Finally, the siblings argued that TPO had not shown that production of the report would violate any privilege.

In response, TPO pointed out that *Cutshall* and *Marcuccilli* only mentioned special litigation committee reports in passing; whether a report must be produced was not at issue in either case.[3] More importantly, TPO argued that the business-judgment rule prohibits inquiry into the substance of a committee's decision; courts may only inquire into a committee's investigative procedures and methodologies. *Id.* at 25. By requesting the unredacted report, the siblings sought to go beyond the bounds of

---

[3] Although Andrew's counsel also participated at the hearing, his arguments aligned with TPO's; for the sake of brevity, we discuss TPO's arguments here. We treat Andrew's arguments on appeal in the same fashion.

6

permissible access under the business-judgment rule. TPO agreed, however, to engage in limited additional discovery relevant to the committee's investigation. *See* Appellant's App. p. 225. Finally, TPO stood firm in its position that the report contained privileged material. Counsel told the trial court the corporation would not object if the court wished to review the unredacted report in camera to evaluate its privilege claims. Tr. p. 89. The trial court did not review the unredacted report.

After the hearing, the trial court granted the siblings' motion and ordered TPO to file the unredacted report under seal and produce copies to the parties. The court also issued a protective order preventing any party from disclosing the report's contents to third parties. In the order, Judge Richard Stalbrink interpreted Indiana Code section 23-1-32-4 and Indiana's business-judgment rule, but said he found no Indiana case law "directly on point." Appellant's App. p. 9-13. He went on to adopt the reasoning of the federal court in *Perrigo*. 128 F.3d at 430. In *Perrigo*, the federal court concluded that "as a matter of *fairness and practicality*, the derivative plaintiffs . . . will need the [committee's] report in order to 'rebut the presumption that [the corporation] acted in good faith and made a reasonable investigation.'" *Id.* at 438 (emphasis added). Judge Stalbrink reached a similar conclusion, saying "it would only seem fair that the parties involved should be provided an opportunity to adequately conduct a review of the [] report to determine if they did, in fact, conduct their investigation in good faith . . . ." Appellant's App. p. 11. He also explained that if he did not have access to the entire report, "all that is before the court is the assertion that the investigation was extensive and

7

expensive and therefore must have been in good faith." *Id.* at 12. The ruling made no mention of privilege.

In March 2012, TPO filed a motion to certify the trial court's order for interlocutory appeal, which the trial court granted. This Court subsequently accepted jurisdiction over this appeal.[4]

### Discussion and Decision

The question posed in this appeal is whether a corporation must provide the report of its special litigation committee to derivative plaintiffs. We begin our analysis by setting forth Indiana law regarding shareholder derivative suits and special litigation committees.

Indiana Code section 23-1-32-4 sets forth all the requirements for a special litigation committee. The Section allows a corporation's board of directors to establish a committee of three or more disinterested directors—or other disinterested persons—to determine whether "the corporation has a legal or equitable right or remedy" and "whether it is in the best interests of the corporation to pursue that right or remedy, if any, or to dismiss a proceeding that seeks to assert that right or remedy on behalf of the corporation." Ind. Code § 23-1-32-4(a)(1), (2). A committee is independent in that it is not subject to the direction or control of the board of directors, and the board may not terminate it. I.C. § 23-1-32-4(b).

If a special litigation committee determines that a derivative proceeding on the corporation's behalf is not in the corporation's best interests, that determination is

---

[4] We held oral argument in this case on August 6, 2013. We commend counsel for their astute and spirited advocacy throughout this case.

"presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding . . . ." I.C. § 23-1-32-4(c). A plaintiff may only challenge this determination by arguing that the committee was not "disinterested" or the committee's determination "was not made after an investigation conducted in good faith." I.C. § 23-1-32-4(c)(1), (2). What constitutes a good-faith investigation will depend in part on the adequacy and appropriateness of a committee's investigatory procedures, which depends on the nature and complexity of the claim. I.C. § 23-1-32-4 cmt. (c).[5] A director or other committee member is "disinterested" if that person:

> (1) has not been made a party to a derivative proceeding seeking to assert the right or remedy in question, or has been made a party but only on the basis of a frivolous or insubstantial claim or for the sole purpose of seeking to disqualify the director or other person from serving on the committee;
>
> (2) is able under the circumstances to render a determination in the best interests of the corporation; and
>
> (3) is not an officer, employee, or agent of the corporation or of a related corporation. However, an officer, employee, or agent of the corporation or a related corporation who meets the standards of subdivisions (1) and (2) shall be considered disinterested in any case in which the right or remedy under scrutiny is not assertable against a director or officer of the corporation or the related corporation.

I.C. § 23-1-32-4(d)(1)-(3).

Section 23-1-32-4 creates a presumption in favor of Indiana corporations; specifically, the presumption that the decisions made by corporations' special litigation committees is conclusive against shareholders. Shareholders may only overcome that presumption by challenging the committee's disinterestedness or good-faith

---

[5] Indiana Code section 23-1-17-5 provides that published official comments "may be consulted by the courts to determine the underlying reasons, purposes, and policies of this article and may be used as a guide in its construction and application."

investigation. The statute codifies the business-judgment rule, which has long been recognized in Indiana. The rule describes the basic principle of judicial reluctance to interfere in corporate matters and the presumption that corporate directors act in an informed, good faith, and honest manner when managing corporate affairs. *See In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571, 575 (Ind. 2006); *see also G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001); *Lees Inns of Am., Inc. v. William R. Lee Irrevocable Trust*, 924 N.E.2d 143, 157 (Ind. Ct. App. 2010), *trans. denied.* Over time, two formulations of the business-judgment rule have emerged: the restrained and deferential *Auerbach* approach, which puts corporate decision-making largely outside judicial review, and the more aggressive *Zapata* approach, which allows a court to exercise its own business judgment in evaluating a special litigation committee's decisions. Indiana has adopted the *Auerbach* approach. *See* I.C. § 23-1-32-4 cmt. (c) (expressly rejecting *Zapata v. Maldonado*, 430 A.2d 779 (Del. 1981), and following *Auerbach v. Bennett*, 393 N.E.2d 994 (N.Y. 1979)).

In practice, Indiana's application of the business-judgment rule limits the scope of inquiry into a committee's investigation. In *Cutshall*, we explained it this way:

> While the court may properly inquire as to the adequacy and appropriateness of the committee's investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment.

> Thus, the courts cannot inquire as to which factors were considered by that committee or the relative weight accorded them in reaching that substantive decision . . . inquiry into such matters would go to the very core of the business judgment made by the committee. To permit judicial probing of such issues would be to emasculate the business judgment doctrine as applied to the actions and determinations of the special litigation

10

committee. Its substantive evaluation of the problems posed and its judgment in their resolution are beyond our reach.

733 N.E.2d at 978 n.6 (citing *Auerbach*, 393 N.E.2d at 1002) (formatting altered).

Although there are many cases applying the business-judgment rule in the derivative-claim setting, there are no Indiana cases addressing the precise issue before us; that is, whether a plaintiff may compel production of a special litigation committee's report.

## I. Motion to Dismiss

Before reaching the substantive issues in this case, the siblings ask us to dismiss this appeal due to TPO's failure to comply with the requirements of Appellate Rule 10. The siblings made this argument to the motions panel, and the panel rejected it. *See* Order on State's Motion to Dismiss, Cause No. 46A03-1207-MI-324 (Ind. Ct. App. Jan. 11, 2013). According to the siblings, notice of completion was issued and served but not filed with the Court of Appeals, and TPO never filed a motion to compel the trial-court clerk to file the notice in accordance with Rule 10(F). In the event that notice of completion is not filed, Rule 10(F) requires an appellant to seek an order from this Court compelling the clerk to complete the record and file such notice. Failure to do so subjects the appellant's appeal to dismissal.

But as TPO explains, the trial-court clerk certified that she timely prepared the notice of completion and sent copies to the parties and the Court of Appeals clerk (as well as our Supreme Court and Tax Court) by United States mail, postage prepaid. This certification entitled TPO to the presumption that the trial-court clerk had done her duty. *See INB Trust No. 337 v. Veljanoski*, 593 N.E.2d 1263, 1266 (Ind. Ct. App. 1992)

11

(citation omitted), *reh'g denied*, *trans. denied*. For some reason, this notice was not immediately reflected on the appellate docket. However, after the siblings filed their motion to dismiss, the docket was updated to reflect the notice, with the certificate-of-service date listed as October 1, 2012, which was timely.

Based on these facts, we see no basis for overruling the motions panel. *See In re Estate of Eguia*, 917 N.E.2d 166, 169 (Ind. Ct. App. 2009) (this Court is reluctant to overrule orders decided by the motions panel).

## II. Standard of Review

TPO argues that this case poses a legal question requiring interpretation of the special litigation committee statute, Section 23-1-32-4. But the statute makes no mention of a committee report; thus, we cannot agree that this is a matter of statutory interpretation.

Rather, this is a discovery dispute, albeit a complex one. Our trial courts are vested with broad discretion with respect to discovery issues. "Decisions regarding discovery matters will be reversed only if there has been an abuse of that discretion." *Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008) (citing *Hartford Fin. Servs. Group, Inc. v. Lake Cnty. Park and Recreation Bd.*, 717 N.E.2d 1232, 1234 (Ind. Ct. App. 1999) (citations omitted)). An abuse of discretion occurs when a trial court's conclusion is against logic and the natural inferences that can be drawn from the facts and circumstances before the trial court, and where there is no rational basis for the trial court's decision. *Id.*

## III. Relevancy

12

The siblings contend that the entire report is relevant to the issue of whether the committee conducted a good-faith investigation of their claims. TPO argues that only the unredacted portions are relevant to good faith. Relevancy as it relates to disinterestedness is not at issue; the parties agree that disinterestedness is a straightforward issue and that the committee members in this case were disinterested.

Under Indiana Evidence Rule 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TPO defines relevance in terms of procedures and methodologies. The corporation claims it produced all the relevant information here (committee-member profiles, the number of meetings, interviews, documents, etc.), and any information beyond that is irrelevant. Because it has never produced the entire report, TPO essentially asks this Court—as well as the siblings and trial court—to trust that it has provided all the relevant information.

But the unredacted report paints a partial picture, at best. It describes what the committee did—not what it may have failed to do or may have done incorrectly or incompletely. The committee may have failed to investigate all of the siblings' complaints or theories of relief. The committee may have failed to interview a key employee, or may have interviewed that employee for less than five minutes. *See Peller v. The S. Co.*, 707 F. Supp. 525, 529 (N.D. Ga. 1988) ("The conduct of the interviews is a most important factor in determining whether the [committee] pursued its charge with diligence and zeal, or whether it played softball with critical players."). The committee may have investigated the wrong issues as well. *See Boland v. Boland*, 31 A.3d 529, 566

13

(Md. 2011) ("The [committee] cannot arrive at a reasonable answer if it addresses the wrong issues. Thus, addressing the wrong issues is an example of unreasonable methodology."). Any of these failures may give rise to a material question about the good faith of the committee's investigation. But the siblings would not know of these issues unless they had access to the entire report. We conclude that the entire report is relevant to the issue of good faith.

## IV. Access to the Report

Having determined that a committee's entire report is relevant, we now consider whether a corporation may refuse to produce it. Judge Stalbrink said no. We agree.

TPO refused to produce the entire report in part because it claimed the redacted material is privileged.[6] This Court has yet to consider privilege in the context of a special litigation committee's report. But other courts have held that a special litigation committee's report may contain privileged material. *See Perrigo*, 128 F.3d at 438; *In re Cont'l Ill. Secs. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984); *Joy v. North*, 692 F.2d 880, 893-94 (2d Cir. 1982); *Hollinger Int'l. Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 514 (N.D. Ill. 2005); *In re Dayco Corp. Derivative Secs. Litig.*, 99 F.R.D. 616, 620-22 (S.D. Ohio 1983).[7] Certainly attorney-client communications will infiltrate many special litigation committee reports, particularly where reports contain attorney advice as to how a

---

[6] We use the term "privileged" to encompass attorney-client communications and attorney work product.

[7] These cases did not limit derivative plaintiffs' access to the report based on privilege.

14

committee should proceed on particular claims.[8] Indeed, the committees' reasoning for rejecting claim may well be based on counsel's advice that a claim is unlikely to succeed on the merits. And in such a case, the very reason that the committee acted in good faith is because of an attorney's advice.

But privilege can be waived, such as in as in malpractice or ineffective-assistance claims. *See Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990) (by bringing personal-injury claim, plaintiff waived physician-patient privilege as to matters causally and historically related to the condition at issue and directly medically relevant to claim, counterclaim, or defense), *reh'g denied*; *Carter v. State*, 738 N.E.2d 665, 674 n.6 (Ind. 2000) ("Carter sought to have trial counsel's testimony excluded from the post-conviction court on the basis of the attorney-client privilege and now asks us to ignore the testimony as well. However, as the post-conviction court correctly noted, a defendant waives the attorney-client privilege when he files a petition for post-conviction relief on the grounds of ineffective assistance of counsel."). We hold that this is another instance where privilege is waived because the report is necessary to the litigation and requiring its production comports with fairness.[9] Our holding is limited to the committee's report only—the written report, or in the case a written report does not exist, an oral report to the corporation's board of directors. Any other claims of privilege are not affected by our holding.

---

[8] The trial court did not rule on the issue of privilege. *Supra*, p. 8. For the purposes of our analysis in this case, we assume that the report contains privileged material.

[9] We do not address the issue of whether a report must be disclosed to the public; we hold only that the report must be produced to derivative plaintiffs.

15

We allow access to the committee report because Indiana law permits the siblings to make two challenges to the committee's determination—they can argue that the committee was not disinterested or that their investigation was not made in good faith. The most relevant source of that information is undoubtedly the committee's report. The siblings cannot make their statutorily allowed challenges, particularly their good-faith challenge, without access to the entire report.[10]

This reality is reflected in case law. In the two Indiana cases that mention a special litigation committee's report, *Cutshall* and *Barker*, the plaintiffs had access to the committees' reports. And we can find no case outside of our state in which derivative plaintiffs have been denied access to a committee's report. Indeed, in two cases where corporations tried to deny the plaintiffs access to the report, their attempts were flatly rejected. *See Perrigo*, 128 F.3d at 438 ("As a matter of fairness and practicality, the derivative plaintiffs . . . will need the Report in order to rebut the presumption that [the corporation] acted in good faith and made a reasonable investigation.") (quotation omitted); *Joy*, 692 F.2d at 893 ("[I]f the . . . committee recommends termination and a motion for judgment follows, the committee must disclose to the court and the parties not only its report but all underlying data.").

Importantly, not just derivative plaintiffs need access to the entire report. Our trial judges need access to the report as well. Without access to these reports, they cannot properly evaluate the parties' claims. *See Perrigo*, 128 F.3d at 438 ("[T]he court must

---

[10] We are unmoved by TPO's argument that the siblings can obtain this information through traditional discovery methods. The report is the best, most comprehensive evidence of the committee's good faith. Other methods of discovering this information will be cumbersome and expensive and will require frequent trial-court intervention.

16

have the report before it can properly rule on Perrigo's motion and perform its judicial function."). Judge Stalbrink acknowledged that reality in this case: "[Without the report] all that is before the court is an assertion that the investigation was extensive and expensive and therefore must have been in good faith." Appellant's App. p. 12. Providing these reports to trial courts will put critically relevant information in the hands of our trial judges, allowing them to make informed decisions regarding the future of derivative plaintiffs' claims.

In closing, we acknowledge TPO's concerns about the potential implications of our holding on the business-judgment rule, but we do not share them. There is no reason to believe that simply allowing derivative plaintiffs access to committee reports will lead to trespass into the domain of business judgment. We are confident in the ability of our trial courts to interpret Indiana's business-judgment rule and reject claims that threaten to emasculate that rule.

We therefore affirm the trial court's order compelling TPO to file a copy of the entire report under seal and produce a copy to the siblings and their counsel, and we remand for further proceedings.

Affirmed.

KIRSCH, J., and PYLE, J., concur.

17