ATTORNEYS FOR PLAINTIFFS
Irwin B. Levin
Richard E. Shevitz
Scott D. Gilchrist
Eric S. Pavlack
Indianapolis, Indiana

James A.L. Buddenbaum
Anthony W. Patterson
Indianapolis, Indiana

Darren J. Robbins
Randall J. Baron
Kevin K. Green
San Diego, California

ATTORNEYS FOR DEFENDANTS
James H. Ham, III
John R. Schaibley, III
Indianapolis, Indiana

Boris Feldman
Nina F. Locker
Keith E. Eggleton
Cheryl W. Foung
Palo Alto, California

ATTORNEYS FOR AMICUS CURIAE
Karl L. Mulvaney
Nana Quay-Smith
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 94S00-0407-CQ-318

IN RE GUIDANT SHAREHOLDERS DERIVATIVE LITIGATION,

KELBOURNE J. RITTER, ET AL.,

*Plaintiffs,*

v.

RONALD W. DOLLENS, ET AL.,

*Defendants.*

Certified Question from the United States District Court,
Southern District of Indiana, No. 1:03-CV-955-SEB-WTL
The Honorable Sarah Evans Barker, Judge

**February 2, 2006**

**Shepard, Chief Justice.**

The U.S. District Court of the Southern District of Indiana has asked us if passage of the Indiana Business Corporation Law in 1986 requires a shareholder commencing a derivative lawsuit to make a written demand on the corporation unless irreparable injury to the corporation would result, or if demand is still excused if it would be futile. Pursuant to Indiana Appellate Rule 64, Judge Sarah Evans Barker has certified the following question of Indiana law:

> Under Indiana Code § 23-1-32-2, regarding futility, by what legal standard should a court evaluate a shareholder's decision not to make demand to a public corporation's board of directors before filing a derivative suit?

We have accepted this certified question and now hold that the Indiana Business Corporation Law retains the futility standard, but narrows its applicability substantially by authorizing corporations to establish disinterested committees to determine whether the corporation should pursue certain claims.

**Facts and Procedural History**

Guidant Corporation is an Indiana company that develops, manufactures, and distributes cardiovascular medical products. Endovascular Technologies Inc. is a wholly owned subsidiary of Guidant. Endovascular designed the Ancure Endograft System to treat abdominal aortic aneurysms and received FDA approval for commercial sale in the United States in 1999. In June 2003, after an investigation into defects in the device, the incomplete handling and reporting of complaints, inadequate corrective actions, and FDA violations, Guidant pled guilty to one felony count of making false statements to a federal agency and nine felony counts of shipping misbranded medical devices in interstate commerce. Guidant also agreed to pay a $43.4 million criminal fine and a $49 million civil settlement.

Six Guidant shareholder derivative actions were filed on behalf of Guidant in response to these events, and they were consolidated in the Southern District of Indiana with Alaska Electrical Pension Fund as the lead derivative plaintiff. On December 17, 2003, Alaska Electrical filed the consolidated complaint alleging breach of fiduciary duty, abuse of control,

2

gross mismanagement, and waste of corporate assets against Guidant's entire board of directors.[1] The directors moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, asserting that the plaintiffs had not made a demand on the board of directors. Alaska Electrical countered that the complaint showed a demand would have been useless, excusing failure to do so.

## I. Indiana Has Long Recognized Demand Futility

Normally, a shareholder wishing to file a derivative lawsuit to pursue a corporation's rights must first demand that the board of directors take action. See Wayne Pike Co. v. Hammons, 129 Ind. 368, 27 N.E. 487 (1891). Since the late 19th century, Indiana has consistently recognized an excuse from the demand requirement where the shareholder alleges with particularity in a verified complaint that a majority of the board of directors are either the tortfeasors and/or interested in the transaction at issue. Perlman v. Feldmann, 129 F.Supp. 162, 194 (D. Conn. 1952)(applying Indiana law), rev'd on other grounds, 219 F.2d 173 (2nd Cir. 1955); Wayne Pike Co., 129 Ind. at 375-78, 27 N.E. at 489-90; Cole Real Estate Corp. v. Peoples Bank & Trust Co., 160 Ind. App. 88, 310 N.E.2d 275, (1974); First Merchs. Nat'l Bank & Trust Co. of Lafayette v. Murdock Realty Co., 111 Ind. App. 226, 39 N.E.2d 507 (1942); Tevis v. Hammersmith, 31 Ind. App. 281, 66 N.E. 79 (1903). This standard for excusing demand is known as demand futility.

## II. The Indiana BCL Does Not Impose Universal Demand

In 1985, the Indiana General Assembly created the Indiana General Corporation Law Study Commission to evaluate the viability of completely revising the Indiana General Corporation Act. 1985 Ind. Acts 2490-91. Based on the Commission's recommendations, the General Assembly passed the Indiana Business Corporation Law ("BCL") in 1986. 1986 Ind. Acts 1377-1532 (current version at Ind. Code Ann. §§ 23-1-17-1 to -54-3 (West 2005)).

---

[1] Guidant is also a defendant in this suit, but only nominally. (Plaintiff's App. at 13.)

The Commission based the BCL largely on the 1984 version of the Revised Model Business Corporation Act ("RMA"), a guide for state business corporation statutes published by the Committee on Corporate Laws of the American Bar Association's Section on Business Law. Ind. Code Ann. § 23-1-17 Introduction (West 2005).

The BCL's demand provision, which has remained unchanged since its enactment, reads as follows:

> A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the shareholder did not make the demand. Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint (including an investigation commenced under section 4 of this chapter), the court may stay any proceeding until the investigation is completed.

1986 Ind. Acts 1422 (current version at Ind. Code Ann. § 23-1-32-2 (West 2005)). This section is very similar to the RMA provision on this subject, the only difference worth noting being the addition of the parenthetical in the second sentence. Compare 1986 Ind. Acts 1422, with MODEL BUS. CORP. ACT § 7.40 (1984).

The BCL reflected Indiana's long-standing demand requirement and the fact that demand may sometimes be excused, but it neither explicitly enumerated nor explained in commentary what constitutes adequate excuse. Some modest explanation is provided in the RMA's comments, which the Commission adopted. Ind. Code Ann. § 23-1-17 Introduction (West 2005). They state, "there may be circumstances showing that a demand on the board of directors would be useless, and in those circumstances it should be sufficient to allege the reasons why the plaintiff did not make the demand." MODEL BUS. CORP. ACT § 7.40 cmt. 1(e) (1984). Indiana's early caselaw held that a demand on a board of directors to prosecute a lawsuit against themselves would be a useless one. See Wayne Pike Co., 129 Ind. at 375-78, 27 N.E. at 489-90 ("Such a suit would be a farce . . . ."); Cole Real Estate Corp., 160 Ind. App. at 94, 310 N.E.2d at

4

278-79 ("Equity does not require the doing of a useless act."). Those who draft pleadings in derivative suits thus commonly name the directors so as to sustain the argument of futility. Here, plaintiffs have named directors who did not participate in the challenged actions and indeed some directors who were not even directors at the time of the events at issue. (Plaintiff's App. at 39, 45.)

The Guidant directors and amicus Indiana Legal Foundation say that section 23-1-32-2 must be read in conjunction with section 23-1-32-4, an innovation of the 1986 act that authorizes a corporation board to form a disinterested committee to determine whether the corporation should pursue a possible claim. They contend that these two sections reflect legislative adoption of the "universal demand" standard, or at least a narrowing of the circumstances in which demands are deemed futile. (Defs.' Mem. Certified Question at 7-11.) A good example of the universal demand standard comes from the current version of the RMA. It requires a shareholder to wait ninety days after a demand is made to file suit unless "irreparable injury to the corporation would result." MODEL BUS. CORP. ACT § 7.42 (1991). Directors and the amicus argue that universal demand allows a corporation to address the alleged wrong without litigation, to decide whether to invest in possibly costly litigation, and to control litigation if that is the route it chooses. (Br. Amicus Curiae at 8.)

Their contentions find support in Boland v. Engle, 113 F.3d 706, 712 (7th Cir. 1997), where the Seventh Circuit speculated "that the highest court in Indiana would today be persuaded by the general trend in the law towards narrowing, if not eliminating, the exceptions from the demand requirement." The court went on to note the growing trend of states adopting the universal demand standard. Id.

If anything, the national trend towards the universal demand rule has accelerated since the Seventh Circuit's observation. Boland, 113 F.3d at 712 (noting that eleven states had then adopted universal demand by statute). Since Boland, eleven more states legislatures have passed universal demand statutes. ARIZ. REV. STAT. ANN. § 10-742 (1996); HAW. REV. STAT. § 414-173 (2000); IDAHO CODE ANN. § 30-1-742 (1998); IOWA CODE § 490.742 (2002); ME. REV. STAT. ANN. tit. 13-C, § 753 (2003); MASS. GEN. LAWS ch. 156D, § 7.42 (2004); R.I. GEN. LAWS

§ 7-1.2-711(c) (2005); S.D. CODIFIED LAWS § 47-1A-742 (2005); TEX. BUS. ORG. CODE ANN. § 21.553 (2006); UTAH CODE ANN. § 16-10a-740(3)(a)(ii) (2000); WYO. STAT. ANN. § 17-16-742 (1997).[2]  In addition, the Pennsylvania Supreme Court adopted the universal demand rule. Cuker v. Mikalauskas, 692 A.2d 1042, 1048-49 (Pa. 1997).  Still, these states represent a slight minority on this discrete issue.

We think the doctrine of futility is sufficiently implanted in the interpretation and operation of Indiana corporate law that we should not deem it cast aside by indirect statutory hint.  There have been occasions since 1986 when straightforward legislative action to adopt the universal demand standard could well have been taken.  In 1991, the Committee on Corporate Laws of the ABA Section of Business Law revised its 1984 RMA version of the demand provision, which had excused demand if it would be futile.  The new universal demand version requires a shareholder to wait ninety days after a demand is made and before filing suit unless "irreparable injury to the corporation would result."  MODEL BUS. CORP. ACT § 7.42 (1991). Though the General Assembly has amended other parts of the BCL since 1991, it has left the demand statute unchanged.  See Ind. Code Ann. § 23-1-30-5 (West 2005), 1998 Ind. Acts 649-50 (adding requirement that inspectors determining the validity of proxies shall specify information used to make determination); Ind. Code Ann. § 23-1-37-14 (West 2005), 1993 Ind. Acts 1970 (specifying that a corporation may purchase liability insurance for its directors from an insurer owned or affiliated with that corporation).

### III.  The BCL Does, However, Redefine Futility

The directors argue that section 23-1-32-4 so significantly narrows the situations where demand would be excused as futile, that it virtually eliminates the need for any doctrine defining what adequately excuses making a demand.  (Defs.' Mem. Certified Question at 8.)  We conclude they are pretty close to being right about this.

---

[2] The years given in this list are the years the statutes became effective.  Arizona's actually became effective before Boland.

Both section 23-1-32-2 and the comments to the 1984 version of the RMA express a preference for the board of directors to enforce a corporation's rights. MODEL BUS. CORP. ACT § 7.40 cmt. 1(e) (1984). Section 23-1-32-4 works with section 23-1-32-2 in expressing an even stronger preference for board management and direction by stating that "the decision whether and to what extent to investigate and prosecute claims . . . should in most instances be subject to the judgment and control of the board." Ind. Code Ann. § 23-1-32-4 cmt. (West 2005). See also Boland, 113 F.3d at 712 (decision to pursue a legal right is a complicated business decision best made by those with "business acumen").

Section 23-1-32-4 of the BCL permits a board of directors to establish a committee of three or more disinterested directors or persons to determine if a corporation has a legal or equitable right or remedy and whether it is in the best interests of the corporation to pursue that right or remedy. 1986 Ind. Acts 1422. This section of our law has no RMA counterpart. Ind. Code § 23-1-32-4 & cmt. To insure that the committee is disinterested, the BCL denies the board the ability to control or terminate the committee. Ind. Code § 23-1-32-4(b). The committee's determination not to pursue a right or remedy through a derivative proceeding is "presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding with respect to such right or remedy," unless a shareholder can prove the committee was not disinterested or there was no good faith investigation. Ind. Code § 23-1-32-4(c). In fact, this statute codifies the "business judgment rule" as applied to a special committee's determination of whether or not pursuit of a legal claim is in the corporation's best interest. See Ind. Code § 23-1-32-4 cmt. (c) (specifically rejecting Zapata v. Maldonado, 430 A.2d 779 (Del. 1981), to the extent that it allows a court to apply its own judgment to evaluate a committee's decision).

Once a corporation establishes a disinterested committee (which it can do even after a suit is filed without a demand according to section 23-1-32-2) demand futility is no longer an issue. There is no need at that point for a court to determine if demand would be futile on traditional grounds, for example, such as when a majority of the board of directors have an interest in the transaction. This is because the decision of the disinterested directors or other disinterested persons is presumed to be conclusive, except where a claimant could establish that

7

the committee was not disinterested or that its determination had not been made after a good faith investigation. Ind. Code § 23-1-32-4(c).

The Indiana study commission explicitly explained that even though the RMA did not provide for a disinterested committee, it believed that "defining procedures for board actions in this area would benefit Indiana corporations, attorneys and the courts." Ind. Code § 23-1-32-4 cmt.[3]

Efforts of this sort were prompted partly by a view that derivative suits were too often efforts to generate fees rather than to redress a corporate wrong. See E. Norman Veasey, *Seeking a Safe Harbor from Judicial Scrutiny of Directors' Business Decisions – An Analytical Framework for Litigation Strategy and Counseling Directors*, 37 Bus. Law. 1247, 1260 (April 1982). The Indiana commission's proposal for disinterested committees was an example of a device to avoid "substantial expenditure of the corporate resources including executive time, lawyers' fees, and other litigation expenses." Id. Recent developments that improve corporate responsibility and accountability suggest the viability of the disinterested committee as an alternative to derivative suits. The Sarbanes-Oxley Act of 2002 increased the level of legal supervision over a corporation's board by ordering the Securities and Exchange Commission to issue rules requiring attorneys of public companies to report evidence of any breach of fiduciary duties to the chief legal counsel or chief executive officer, and if they do not respond appropriately, to the board of directors. Sarbanes-Oxley Act of 2002 §307, 15 U.S.C.A. 7245 (2002). Likewise, our 2004 amendments to the Indiana Rules of Professional Conduct include new and substantial provisions guiding attorneys representing corporations who become aware of wrongdoing by corporate officers or employees. Ind. Professional Conduct Rule 1.13.

---

[3] Our conclusion about the effect of authorizing disinterested committees seems not to affect the "irreparable injury" exception, which in Indiana comes from Tevis v. Hammersmith, 31 Ind. App. 281, 66 N.E. 79 (1903). In Tevis, the shareholder alleged that the corporation purchased iron pipe to construct a waterworks system. After the corporation abandoned this purpose and the price of the pipe rose, the pipe was sold and the suppliers were paid. The profits from the excess pipe were at issue, and the Court of Appeals held that if demand was made, the "pipe would have been shipped out of the state of Indiana before any action could have been brought, and thereby the purpose of the action would have been defeated." Tevis, 31 Ind. App. at 286, 66 N.E. at 81.

## Conclusion

A shareholder may be excused under Indiana Code § 23-1-32-2 from making a demand on the board of directors before filing a derivative suit if such demand would be futile. Such a demand is no longer futile, however, simply because the verified complaint names the members of the board, or because it alleges that members of the board are involved in wrongdoing. The availability of the disinterested committee will bar a separate derivative action unless the derivative plaintiff can establish that the committee was not disinterested or that its decision was not undertaken after a good faith investigation.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**