ATTORNEYS FOR APPELLANT/INTERVENOR,
TP ORTHODONTICS, INC.
Sean M. Clapp
Elizabeth M. Ellis
Fishers, Indiana


ATTORNEYS FOR AMICUS CURIAE, INDIANA LEGAL
FOUNDATION
Julia Blackwell Gelinas
David T. Kasper
Maggie L. Smith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES, CHRISTOPHER KESLING,
DDS, MS, ADAM KESLING, and EMILY KESLING
Robert W. Wright
Indianapolis, Indiana

Shaw R. Friedman
LaPorte, Indiana

John A. Conway
John A. Drake
South Bend, Indiana

ATTORNEYS FOR APPELLEE, ANDREW KESLING
Thomas G. Burroughs
Michael W. Hile
Indianapolis, Indiana

FILED

Sep 03 2014, 1:43 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 46S03-1405-MI-337

TP ORTHODONTICS, INC.,

*Appellant/Intervenor*

CHRISTOPHER KESLING, DDS, MS, ADAM
KESLING, and EMILY KESLING, Individually
and derivatively on behalf of
TP ORTHODONTICS, INC.,

*Appellees (Plaintiffs below),*

v.

ANDREW KESLING, Individually and as
TRUSTEE OF THE ANDREW C. KESLING
TRUST DATED MARCH 28, 2001, and THE
ANDREW C. KESLING TRUST DATED MARCH
28, 2001,

*Appellees (Defendants below).*

Interlocutory Appeal from the LaPorte Superior Court, No. 46D02-1001-MI-15
The Honorable Richard R. Stalbrink, Jr., Judge

**September 3, 2014**

**David, Justice.**

Following the initiation of a derivative suit by sibling minority shareholders, TP Orthodontics' board of directors formed a special litigation committee (the "SLC") to investigate the derivative claims pursuant to Ind. Code § 23-1-32-4 (2007). After a year-long investigation, the SLC produced the report that is at issue here. As a result of the report's recommendations, TPO filed a motion to dismiss certain derivative claims and attached a heavily redacted version of the report in support of its motion. Approximately 120 of the report's 140 pages had been redacted "to prevent disclosure of attorney-client privileged information and attorney-work product prepared in anticipation of litigation." (Appellant's App. at 183.)

Seeking access to the unredacted report in order to challenge the SLC's conclusions on one of only two grounds permitted by Indiana law, the sibling shareholders filed a motion to compel production of the full report. The trial court granted the sibling shareholders' motion, and the Court of Appeals affirmed on interlocutory appeal. After holding oral argument, we granted TPO's petition to transfer and are now faced with resolving two valid but competing interests: the siblings shareholders' desire to access the full SLC report in order to contest the SLC's conclusions, and TPO's desire to protect privileged attorney-client communications and attorney work product potentially contained within the SLC report.

**Facts and Procedural History**

TP Orthodontics is a closely-held corporation headquartered in Westville, Indiana, and the Kesling family business. Andrew Kesling, President of TPO, owns fifty-one percent of TPO's voting stock. Collectively, Andrew's siblings Christopher (DDS, MS), Adam, and Emily Kesling own eleven percent. In January 2010, the sibling minority shareholders filed, both individually and derivatively on behalf of TPO, a complaint against Andrew in the LaPorte Superior Court alleging wrongdoing causing a significant decrease in shareholder value.[1] The trial court granted TPO's motion to intervene, and pursuant to Ind. Code § 23-1-32-4, TPO's board of directors formed a special litigation committee to investigate the derivative claims. After meeting thirty times and conducting forty interviews, the SLC ultimately recommended that only some derivative claims be pursued and issued the report that is the subject of this appeal.

Based on the report, TPO filed a motion to dismiss—or alternatively a motion for summary judgment—the rejected derivative claims and in support attached the 140-page report and other documents. However, claiming attorney-client privilege and work-product privilege, TPO redacted 120 pages of the report. In response, the sibling shareholders filed a motion to compel production of the full SLC report[2] in order to contest the SLC's conclusions on one of two grounds permitted by Indiana law: the SLC's determination "was not made after an investigation conducted in good faith." Ind. Code § 23-1-32-4(c).

---

[1] This is only the most recent in a series of intrafamilial disputes. See Kesling v. Kesling, 967 N.E.2d 66 (Ind. Ct. App. 2012) (siblings challenged transfer of TPO shares from their father to Andrew), trans. denied; Kesling v. Kesling, 546 F.Supp.2d 627 (N.D. Ind. 2008) (father contested same transfer of TPO shares); and Kesling v. Kesling, 955 N.E.2d 781 (Ind. Ct. App. 2011) (siblings intervened in Andrew's divorce proceedings challenging disposition of assets of other corporations closely held by the Kesling family), trans. denied.

[2] Except for one section regarding surviving derivative claims not at issue.

Opposing the sibling shareholders' motion, TPO argued that it should not have to produce the unredacted report because, among other reasons, (1) the business judgment rule prohibited inquiry into the substance of the SLC's report; and (2) the report contained protected attorney-client communications and attorney work product.[3]  Though TPO stated it would have no objection to an in camera review by the trial court in order for the court to determine whether the redacted material is privileged, in camera review did not occur.

Following a hearing, the trial court granted the sibling shareholders' motion, ordered TPO to file the full SLC report under seal, and issued a protective order preventing any party from disclosing the report's contents.  On interlocutory appeal, the Court of Appeals affirmed and held that (1) under Ind. Evidence Rule 401, the entire unredacted SLC report was relevant to the issue of whether the SLC acted in good faith; and (2) TPO waived its privilege as to the SLC report.  In re TP Orthodontics, Inc., 995 N.E.2d 1057 (Ind. Ct. App. 2013).

TPO subsequently petitioned this Court for transfer.  Amicus curiae Indiana Legal Foundation filed a brief aligned with TPO.  Following oral argument, we granted transfer, thereby vacating the Court of Appeals opinion.  Ind. Appellate Rule 58(A).

**Standard of Review**

Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion.  Richey v. Chappell, 594 N.E.2d 443, 447 (Ind. 1992).  Furthermore, although TPO filed a motion to dismiss, it designated the SLC report and other documents as

---

[3] Andrew filed a response with the trial court opposing his siblings' motion to compel.  He also filed a brief aligned with TPO with the Court of Appeals.

4

evidence. Thus, pursuant to Ind. Trial Rule 12(B), TPO's motion shall be treated as one for summary judgment.[4][5]

An appellate court's standard of review for a grant or denial of a summary judgment motion is the same as that used by the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Reeder v. Harper, 788 N.E.2d 1236, 1240 (Ind. 2003). See also Ind. Trial Rule 56(C). All facts and reasonable inferences drawn therefrom are construed in favor of the non-moving party. Reeder, 788 N.E.2d at 1240.

## Discussion

This case presents us with two compelling but competing interests: the sibling shareholders' desire to access the full SLC report in order to contest the SLC's conclusions, and TPO's desire to protect privileged attorney-client communications and attorney work product potentially contained within the SLC report. Addressing these competing interests, the trial court reasoned that "[i]t would seem only fair that the parties involved should be provided an opportunity to adequately conduct a review of the SLC report to determine if they did, in fact, conduct their investigation in good faith and that they are in fact disinterested" and accordingly ordered TPO to file the unredacted SLC report under seal. (Appellant's App. at 11.) On appeal, TPO contends that (1) the business judgment rule; and (2) attorney-client privilege and work product privilege prevent disclosure of the full SLC report to the sibling shareholders.

---

[4] See Ind. Trial Rule 12(B) ("If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

[5] Recall that TPO designated its motion to dismiss a motion for summary judgment "in the alternative." (Appellant's App. at 144.)

5

## I.       Business Judgment Rule and Relevancy of Unredacted SLC Report to Sibling Shareholders' Good Faith Inquiry

First, TPO contends that the trial court erred by compelling production of the unredacted SLC report in violation of Indiana's business judgment rule.  Embedded in American corporate law, In re PSE&G S'holder Litig., 801 A.2d 295, 306 (N.J. 2002) (internal citation omitted), the business judgment rule generally describes judicial reluctance to interfere in corporate decision making,  See In re Guidant S'holders Derivative Litig., 841 N.E.2d 571, 575 (Ind. 2006); G&N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 238 (Ind. 2001).  It originated over a hundred years ago "as a means of limiting the liability of corporate directors and officers for mistakes made while performing their duties."  Cramer v. Gen. Telephone & Electronics Corp., 582 F.2d 259, 274 (3rd Cir. 1978); see also Briggs v. Spaulding, 141 U.S. 132 (1891).

More specifically, in order to "promote and protect the full and free exercise of the power of management," In re PSE&G S'holder Litig., 801 A.2d at 306 (internal citations omitted), the business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes."  Auerbach v. Bennett, 47 N.Y.2d 619, 629 (N.Y. 1979).  A court "will not substitute its judgment for that of the board if the latter's decision can be attributed to any rational business purpose."  Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946, 954 (Del. 1985) (internal citation omitted).  This is because "in order for the corporation to be managed properly and efficiently, directors must be given wide latitude in their handling of corporate affairs."  Cramer, 582 F.2d at 274.

Judicial reluctance to interfere in corporate decision making is also "grounded in the prudent recognition that courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments . . . by definition the responsibility for business judgments must rest with corporate directors."  Auerbach, 47 N.Y.2d at 630–31.  Accordingly,

6

"absent evidence of bad faith or fraud . . . the courts must and properly should respect" corporate directors' determinations, however ultimately unwise or inexpedient the decision or result is viewed in hindsight. Id. at 631. Because the rule presumes that directors exercised sound business judgment, the party challenging the directors' decision has the burden of establishing the facts necessary to rebut this presumption. In re Abbott Laboratories Derivative S'holders Litig., 325 F.3d 795, 807 (7th Cir. 2003) (internal citation omitted).

When the General Assembly passed the Indiana Business Corporation Law in 1986, it codified the business judgment rule. In re ITT Derivative Litig., 932 N.E.2d 664, 667, 670 (Ind. 2010). As we explained in G&N Aircraft, Inc., "Indiana has statutorily implemented a strongly pro-management version of the business judgment rule," which "includes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." 743 N.E.2d at 238 (internal citation omitted). Director liability is permitted only for recklessness or willful misconduct; negligence is insufficient to overcome the presumption of good faith. Id.

Indiana's SLC process under Ind. Code § 23-1-32-4 is a manifestation of the business judgment rule. See In re Guidant S'holders Derivative Litig., 841 N.E.2d at 575. Ind. Code § 23-1-32-4(a) permits a corporation's board of directors to establish a special litigation committee "consisting of three (3) or more disinterested directors or other disinterested persons to determine: (1) whether the corporation has a legal or equitable right or remedy; and (2) whether it is in the best interests of the corporation to pursue that right or remedy." Should the committee determine that pursuit of a right or remedy through a derivative proceeding is not in the corporation's best interests,

> the merits of that determination shall be presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding with respect to such right or remedy, unless such shareholder can demonstrate that: (1) the committee was not

7

"disinterested" within the meaning of this section; or (2) the committee's determination was not made after an investigation conducted in good faith.

Ind. Code § 23-1-32-4(c).

Thus, once an SLC has determined that pursuit of a derivative claim would not be in the corporation's best interests, a shareholder has only two means of overcoming this conclusive statutory presumption—either by demonstrating that the SLC was not "disinterested" as defined in Ind. Code § 23-1-32-4(d) or that the SLC's determination "was not made after an investigation conducted in good faith." Ind. Code § 23-1-32-4(c). Otherwise, the shareholders cannot successfully challenge the SLC's conclusions. "In essence, subsection (c) codifies the 'business judgment rule' as applied to a decision by a properly constituted committee, acting in good faith, about whether pursuit of a right or remedy is in the corporation's best interests. This result follows cases such as Auerbach v. Bennett, 47 N.Y.2d 619 [,623.]" Ind. Code § 23-1-32-4(c) cmnt. (c).

As the Court of Appeals recognized, courts have followed two approaches to the business judgment rule: "the restrained and deferential Auerbach approach, which puts corporate decision-making largely outside judicial review, and the more aggressive Zapata [v. Maldonado, 430 A.2d 779 (Del. 1981)] approach, which allows a court to exercise its own business judgment in evaluating a special litigation committee's decisions." In re TP Orthodontics, Inc., 995 N.E.2d at 1062. The court in Auerbach held that

> [w]hile the substantive aspects of a decision to terminate a shareholders' derivative action against defendant corporate directors made by a committee of disinterested directors appointed by the corporation's board of directors are beyond judicial inquiry under the business judgment doctrine, the court may inquire as to the disinterested independence of the members of that committee

8

*and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee.*

47 N.Y.2d at 623 (emphasis added).

Here, the sibling shareholders do not challenge the disinterestedness of the committee members; instead, they contend that they must have access to the entire SLC report in order to carry their statutory burden of demonstrating the SLC's lack of a good faith investigation. Ind. Code § 23-1-32-4 is silent as to disclosure of the SLC report: as both lower courts recognized, this is an issue of first impression before this Court.[6]

Unlike "disinterested," what constitutes a good faith investigation is not squarely set out by Ind. Code § 23-1-32-4, though its official comments provide that "'[g]ood faith' will depend in part on the adequacy and appropriateness of the [SLC]'s investigatory procedures, which in turn will depend on the nature and complexity of the claim." Ind. Code § 23-1-32-4(c) cmnt. (c). The Court of Appeals has determined that "under Auerbach, a plaintiff shareholder challenging the good faith of an SLC's investigation must prove that the SLC's investigation was 'so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham.'" Cutshall v. Barker, 733 N.E.2d 973, 982 (Ind. Ct. App. 2000) (quoting Auerbach, 47 N.Y.2d at 634). We agree. In this context, good faith comprises both the

---

[6] In the two reported Indiana decisions addressing the dismissal of derivative claims based upon an SLC's determination, disclosure of the SLC report was not at issue. Marcuccilli v. Ken Corp., 766 N.E.2d 444 (Ind. Ct. App. 2002) and Cutshall v. Barker, 733 N.E.2d 973 (Ind. Ct. App. 2000). In the absence of guidance from this Court, both lower courts relied on In re Perrigo Co., where the Sixth Circuit granted the derivative plaintiffs' motion to compel production of a report prepared by an independent party in derivative proceedings and held that "[a]s a matter of fairness and practicality, the derivative plaintiffs . . . will need the [r]eport in order to rebut the presumption that [the report's author] acted in good faith and made a reasonable investigation." 128 F.3d 430, 438 (6th Cir. 1997) (internal quotation omitted).

9

methodology *and* the substance of the SLC's investigation into the shareholders' derivative claims.[7]

Arguing that "[t]he redacted SLC Report provides detailed information concerning the systematic and thorough approach taken by the SLC during its investigation," TPO concludes that "there can be no serious doubt that the SLC conducted a good faith investigation in this instance." (Appellant's Br. at 16–17.) In support, TPO calls our attention to its disclosure of the following: (1) a log showing thirty SLC meetings over the course of a year; (2) the "comprehensive investigative process" undertaken by the SLC; (3) a description of the SLC's document production and review; and (4) the SLC's interviews of forty witnesses. (Id.) To TPO, nothing more is relevant to a determination of whether or not the SLC reached its conclusions in good faith.

But as the trial court acknowledged, we cannot tell if the SLC conducted a good faith investigation into the derivative claims by "the mere fact that the report consists of 140 pages and the multiple witnesses interviewed."[8] (Appellant's App. at 11.) Likewise, the sibling shareholders argue that "[t]he Un-Redacted SLC Report is relevant . . . to prove, if applicable, that the SLC's investigation as to any particular rejected claim was 'so restricted in scope, so shallow in execution, or otherwise so *pro forma* or half-hearted as to constitute a pretext or sham.'" (Joint Appellees' Br. at 22 (quoting Cutshall, 733 N.E.2d at 982).) Put differently, the sibling shareholders are not satisfied with TPO's disclosure of only the methodology of the SLC's investigation.

---

[7] We emphasize that evaluating the substance of the SLC's investigation is not the same as evaluating the substance of the SLC's ultimate conclusions regarding the claims. The latter is inconsistent with Auerbach.

[8] According to the trial court, absent full disclosure of the SLC report, "all that is before the court is an assertion that the investigation was extensive and expensive and therefore must have been in good faith." (Appellant's App. at 12.)

Information available through discovery, "although broad, is not all-inclusive. Indiana Trial Rule 26(B)(1) requires that the information sought must be relevant, admissible, or reasonably calculated to lead to the discovery of admissible evidence, and not privileged." Richey, 594 N.E.2d at 445. "Evidence is relevant if, in the light of general experience, it logically tends to prove or disprove some issue of fact." White v. State, 425 N.E.2d 95, 97 (Ind. 1981) (citing Irons v. State, 272 Ind. 287, 292, 397 N.E.2d 603, 606 (1979)).

Here, there is no question that the full, unredacted SLC report is relevant at this stage of discovery proceedings, as the content of the report will provide the sibling shareholders with the information necessary to either prove or disprove the issue of whether the SLC conducted a good faith investigation into the derivative claims. Because an SLC's good faith inquiry goes beyond procedure and into the substance of its investigation, it was not enough for TPO to only disclose portions of the SLC's report detailing the SLC's methodology. For example, the SLC may have conducted forty interviews, but the evidence of good faith lies in the quality, or lack thereof, of these interviews—who was interviewed, who was not interviewed, how thorough was the questioning, whether leads were followed up on, etc. Similarly, it is inadequate for TPO to cite a log of thirty SLC meetings without providing information on the quality and thoroughness of the discussions regarding the derivative claims that took place in these meetings. The trial court was correct to recognize that derivative plaintiffs need more than evidence of an SLC's methodology to assess whether the SLC investigated in good faith before reaching its conclusion(s). But this is not the end of our review, for even though the entire SLC report may be relevant to the ultimate issue, it may contain privileged information potentially precluding disclosure.

Before we address whether the SLC's report at issue contains privileged information, and if it does how to reconcile the parties' competing interests, we emphasize that this is a discovery dispute that does not directly implicate, let alone undermine, the business judgment rule. Contrary to TPO's assertion that requiring full or even partial disclosure of the SLC report compromises the policy of managerial discretion in derivative litigation that underlies the rule,

we do not believe that permitting full or partial disclosure of the report constitutes judicial interference in business decision making or the SLC process. Consistent with the policy underlying the business judgment rule, we are not substituting our judgment for that of TPO's directors. And to be sure, the statutory presumption of the SLC's good faith still stands—it is the necessary *access* of the sibling shareholders to the report in order to rebut this presumption that is at issue here.

## II.     Privilege

Next, TPO claims that the trial court also erred by compelling production of the unredacted SLC report because the full report contained privileged attorney-client communications and attorney work product. In response, the sibling shareholders contend, among other things, that TPO impermissibly made a blanket claim of privilege, TPO implicitly waived any privileged information in the report by putting the SLC's good faith at issue, and that justice requires disclosure of the full report. Both TPO and the sibling shareholders agree that waiver of privilege in this context is also an issue of first impression before this Court.

We begin by noting that the trial court's order does not explicitly address the issue of privilege. Furthermore, the Court of Appeals "assume[d] that the report contains privileged material" for the purposes of its analysis. In re TP Orthodontics, Inc., 995 N.E.2d at 1065 n.8. This is perhaps a fair assumption, as "attorney-client communications will infiltrate many special litigation committee reports, particularly where reports contain attorney advice as to how a committee should proceed on particular claims." Id. at 1065. However, "[t]he party seeking to assert a privilege has the burden to allege and prove the applicability of the privilege as to each question asked or document sought. Claims of privilege must be made and sustained on a question-by-question or document-by-document basis." Hayworth v. Schilli Leasing, Inc., 669 N.E.2d 165, 169 (Ind. 1996) (internal citations omitted). See also Ind. Trial Rule 26(B)(5) (party

12

claiming privilege "shall make the claim expressly and shall describe the nature of the . . . communications . . . not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege").

This TPO did in an affidavit of James Hutton, TPO Corporate Secretary, designated in support of its motion to dismiss: "A true and accurate copy of the [SLC] report, which has been redacted to prevent disclosure of attorney-client privileged information and attorney-work product prepared in anticipation of litigation, is attached to this Affirmation as <u>Exhibit D</u>." (Appellant's App. at 183.) Even the sibling shareholders concede this is "evidence supporting TPO's assertion" of privilege. (Joint Br. of Appellees at 27.) Although TPO redacted over eighty-five percent of the SLC report, this was a broad, but not blanket, claim of privilege. Therefore, TPO met its burden of asserting privilege as to portions of the document sought by the siblings, and we turn our attention to whether there was privilege to assert.

First, TPO claims that the redacted portions of the SLC report "contain attorney opinion work product prepared in anticipation of litigation and, therefore, are privileged and not discoverable" by the sibling shareholders. (Appellant's Br. at 29.) It is the party asserting the privilege who must establish that the materials sought to be protected from disclosure were prepared in anticipation of litigation rather than in the normal course of business. See <u>Richey</u>, 594 N.E.2d at 445. Ind. Trial Rule 26(B)(3) provides, in pertinent part, that:

> a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney . . .) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by others means. In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions,*

13

*opinions, or legal theories of an attorney or other representative of
a party concerning the litigation.*

(emphasis added.)  This is because "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" in order to best serve "the interests of clients and the cause of justice."  Hickman v. Taylor, 329 U.S. 495, 510–11 (1947).

Importantly, we have interpreted "the court shall protect against disclosure" to mean, even upon a showing of hardship, that "the party seeking discovery *is in no event entitled to*" the opposing party's attorney's mental impressions, conclusions, opinions, or legal theories.  Richey, 594 N.E.2d at 445 (emphasis added).  As detailed in TPO's motion to dismiss, the SLC was counseled throughout its investigation by attorneys of the law firm of Wooden & McLaughlin LLP, with the ensuing report reflecting the "SLC's and its counsel's comparison of the relevant facts to the applicable law pertaining to each of the Kesling Plaintiffs' claims," as well as a joint evaluation of "the strengths and weaknesses underlying each allegation in the Complaint." (Appellant's Br. at 34.)  We agree with TPO that "Indiana Trial Rule 26(B)(3) places these mental impressions outside the realm of permissible discovery."  (Appellant's Br. at 34.)  Thus, the sibling shareholders' claim that TPO did not meet its burden of asserting work product privilege lacks merit.

Second, TPO argues that the SLC report contains protected attorney-client communications.  "Under Indiana law, a communication between an attorney and a client is privileged and not discoverable."  Richey, 594 N.E.2d at 445.  See also Ind. Code § 34-46-3-1(1) (2008) (attorneys not required to testify "as to confidential communications made to them in the course of their professional business, and as to advice given in such cases").  Attorney-client privilege allows "a person to give complete and confidential information to an attorney, so that the attorney may be fully advised in his services to the client.  At the same time, it assures the

14

client that these confidences will not be violated." Mayberry v. State, 670 N.E.2d 1262, 1266 (Ind. 1996).

To invoke attorney-client privilege, the invoking party must "establish by a preponderance of the evidence (i) the existence of an attorney-client relationship and (ii) that a confidential communication was involved." Id. Minimally, meeting this burden entails establishing that "the communication at issue occurred in the course of an effort to obtain legal advice or aid, on the subject of the client's rights or liabilities, from a professional legal advisor acting in his or her capacity as such." Id.

The SLC report attached to TPO's motion to dismiss satisfies both requirements. First, the report states that the SLC retained the attorneys of the law firm of Wooden & McLaughlin for assistance in conducting the underlying investigation. Thus, an attorney-client relationship existed between the attorneys at Wooden & McLaughlin and the SLC. Second, as discussed above, the report contained recommendations from the SLC's counsel—communications in response to the SLC's efforts to obtain legal advice regarding the validity of the derivative claims from attorneys acting in their professional capacity. Given that TPO has met its burden of establishing the presence of confidential attorney-client communications within the SLC report, we find the sibling shareholders' contrary assertion without merit.

Also unpersuasive is the sibling shareholders' claim that TPO put good faith at issue in its motion to dismiss and thus implicitly waived any privilege contained within the SLC report. Though the sibling shareholders are correct to note that TPO stated "the filing of TPO's Motion to Dismiss puts only two issues 'at issue.' They are the disinterestedness of the SLC and the good faith nature of the SLC's investigation" (Appellant's Br. at 44 n.6.), this can hardly be viewed as a dispositive concession where the siblings are *trying to force TPO to waive privilege*. In comparison, a defendant who files a petition for post-conviction relief based on ineffective assistance of counsel is determined to have waived attorney-client privilege—so as to permit the

attorney to explain his or her conduct and communications with his or her client—because the defendant placed counsel's competency at issue. Logston v. State, 266 Ind. 395, 399, 363 N.E.2d 975, 977 (1977). Moreover, Ind. Code § 23-1-32-4(c) presumes the SLC's determination, if made following a good faith investigation, is conclusive. Unlike the Court of Appeals, we do not think that the circumstances before us constitute another instance where privilege is implicitly waived.[9] In re TP Orthodontics, Inc., 995 N.E.2d at 1065. Rather, it is the sibling shareholders who put the SLC's good faith, or lack thereof, at issue by filing a derivative suit.

Further, the sibling shareholders cite State v. Int'l Bus. Mach. Corp. for the premise that "the existence of a privilege does not preclude the trial court from ensuring that the interests of justice are served in a particular litigation." 964 N.E.2d 206, 211 (Ind. 2012) (Joint Br. of Appellees at 39.) According to the sibling shareholders, this authorizes the trial court, in its discretion, to exclude the redacted SLC report. Though "trial courts have the right and duty to manage proceedings before them to insure both expedition and fairness, and must be granted a wide discretion in carrying out that duty," Int'l Bus. Mach. Corp., 964 N.E.2d at 211 (internal citation omitted), this discretion does not permit revealing privileged communications. This in fact was the holding of Int'l Bus. Mach. Corp. Id. at 208 (statute providing Governor of the State of Indiana "privileged . . . from obeying any subpoena to testify" precluded trial court from issuing order compelling Governor's deposition in contract dispute).

Similarly, we cannot agree with the Court of Appeals that TPO's "privilege is waived because the report is necessary to the litigation and requiring its production comports with fairness." In re TP Orthodontics, Inc., 995 N.E.2d at 1065. Both attorney-client communication and attorney work product prepared in anticipation of litigation enjoy protected status under

---

[9] The Court of Appeals, as well as both the trial court and Appellees, cite In re Perrigo Co., where the Sixth Circuit held that "Perrigo has waived the protections afforded by the attorney-client privilege and the work-product doctrine for the . . . Report since it constructively brought the Report into issue." 128 F.3d at 448. For the reasons given above, we do not find this case instructive.

Indiana law. Accordingly, the trial court abused its discretion in ordering disclosure of the full SLC report, as portions of the SLC report containing privileged information cannot be disclosed to the sibling shareholders. However, the question remains as to who will be entrusted to determine which material contained within the SLC report is actually privileged.

### III.      Resolution

At its essence, this is a discovery dispute. The silence of Ind. Code § 23-1-32-4(c) as to the disclosure of an SLC report leaves us to consider each side's arguments and reach a fair and workable solution to a situation likely to repeat itself. According to TPO, allowing the sibling shareholders access to the full SLC report would not only vitiate the attorney-client and work product privileges, but also hand the sibling shareholders a roadmap of the case against TPO, as prepared by TPO—an unfair advantage to the sibling shareholders in current and future direct and derivative litigation against TPO. Amicus curiae Indiana Legal Foundation also voices its concern that an adverse decision would, upon the initiation of a derivative suit, force a corporation to either "give up the corporation's right to control the decision whether to prosecute claims or give up the corporation's right to its attorney-client privilege." (Amicus Br. at 10.) But the sibling shareholders counter that without access to the substance of the entire SLC report, they cannot meet their statutory burden of establishing the SLC's lack of a good faith investigation. It is not enough, the sibling shareholders argue, for TPO to cite pages produced or interviews conducted as evidence of the SLC's good faith in determining not to pursue certain claims.

In addition to these valid yet conflicting interests, we also must consider the nature of SLC reports under Ind. Code § 23-1-32-4. Should SLC reports become too accessible to minority shareholders, and thus readily available in derivative and direct litigation, SLCs will likely become less candid in their reports, and corporations will likely discourage their use,

17

thereby increasing the costs of litigation. As this would defeat the purpose of SLCs and SLC reports, we are careful that our decision not change the character of SLC reports from what the legislature intended.

Although the sibling shareholders desire access to the full SLC report in order to meet their statutory burden of establishing the SLC's lack of a good faith investigation, their wish for access cannot come at the expense of TPO's desire to protect the privileged attorney-client communications and attorney work product contained within the report. We therefore remand this case to the trial court and direct (1) TPO to *specifically identify* privileged attorney-client communications and attorney work product contained within the SLC report; (2) the trial court to review in camera the revised redacted SLC report and privilege designations to determine whether the designated material is in fact privileged; (3) the trial court to then order the release of the revised SLC report not protected by privilege to the sibling shareholders; and (4) the trial court to issue a protective order preventing any party from disclosing the report's (unredacted) contents.

An in camera review "should be a rare procedure in discovery disputes" because it "requir[es] the trial court to expend a great amount of time and energy." Richey, 594 N.E.2d at 445; Canfield v. Sandock, 563 N.E.2d 526, 531 (Ind. 1990). But here, such an expenditure of resources is worthwhile. Under these and similar circumstances, the trial court serves as a gatekeeper whose sole obligation at this stage of the proceeding is to review the SLC report to determine what is or is not privileged attorney-client communication and what is or is not privileged attorney work product. It will not look for evidence on the ultimate issue, i.e. whether the SLC conducted a good faith investigation. Should the trial court determine that the SLC report contains privileged attorney-client communication and/or privileged attorney work product, it will redact the privileged information before ordering the release of the redacted SLC

18

report to the derivative plaintiffs.[10] However, absent derivative plaintiffs' valid or unasserted claims of attorney-client privilege or work product privilege, SLC reports are to be presumptively disclosed.


### IV.        Conclusion


Therefore, we remand this case to the trial court with the above instructions.


Rush, C.J., Dickson, Rucker, and Massa, JJ., concur.

---

[10] But see In re Perrigo Co., 128 F.3d at 438 (derivative plaintiffs entitled to corporate report assessing underlying suit despite corporation's claim of attorney-client privilege and work product immunity); Joy v. North, 692 F.2d 880, 893 (2nd Cir. 1982) (if SLC recommends termination of derivative action and motion for judgment follows, committee must disclose its report and underlying data).