

FILED

08/31/2017, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Shaw R. Friedman
Friedman & Associates, P.C.
La Porte, Indiana

John A. Conway
Stephen M. Judge
LaDue Curran & Kuehn LLC
South Bend, Indiana

ATTORNEY FOR APPELLEE
ANDREW C. KESLING,
INDIVIDUALLY AND AS
TRUSTEE OF THE ANDREW C.
KESLING TRUST DATED MARCH
28, 2001, AND THE ANDREW C.
KESLING TRUST DATED MARCH
28, 2001

John P. Higgins
Katz & Korin, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
TP ORTHODONTICS, INC.

Sean M. Clapp
Ian T. Keeler
Clapp Ferrucci
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher K. Kesling, DDS, MS, Adam Kesling and Emily Kesling, individually and derivatively on behalf of TP Orthodontics, Inc.,

*Appellants-Plaintiffs,*

v.

Andrew C. Kesling, individually and as Trustee of the Andrew C. Kesling Trust dated March 28, 2001, and the Andrew C. Kesling Trust dated March 28, 2001,

*Appellees-Defendants*

and

TP Orthodontics, Inc.,

*Intervenor-Appellee*

August 31, 2017

Court of Appeals Case No. 46A03-1701-MI-64

Appeal from the LaPorte Superior Court

The Honorable Richard R. Stalbrink, Jr., Judge

Trial Court Cause No. 46D02-1001-MI-15

**Crone, Judge.**

# Case Summary

[1] Christopher K. Kesling, DDS, MS, Adam Kesling, and Emily Kesling, individually and on behalf of TP Orthodontics, Inc. (collectively "the Sibling Shareholders"), appeal the trial court's entry of summary judgment in favor of intervenor TP Orthodontics, Inc. ("TPO"), and defendants Andrew C. Kesling, individually and as Trustee of the Andrew C. Kesling Trust Dated March 28, 2001, and the Andrew C. Kesling Trust Dated March 28, 2001 (collectively "Andrew").[1] This matter involves extremely contentious litigation following the initiation of a lawsuit by three sibling minority shareholders against their brother, who is the majority shareholder and president of the family orthodontics manufacturing and distributing business. The Sibling Shareholders raised numerous claims against Andrew alleging, among other things, breach of fiduciary duties and mismanagement of TPO.

[2] Upon TPO's motion following an investigation of the claims by a disinterested special litigation committee appointed by TPO's board of directors, and after a stay of proceedings to resolve discovery disputes between the parties, the trial court entered summary judgment, dismissing several of the Sibling Shareholders' claims and determining that the four remaining claims were derivative claims for alleged injuries to TPO. The court further concluded, in

---

[1] Although there are two additional "appealed orders" issued by the trial court and included in our record (order denying TPO's motion to strike and order granting the Sibling Shareholders' motion for leave to file a surreply), none of the parties address those orders in their briefs on appeal. Likewise, we decline to address them.

its discretion, that the Sibling Shareholders would not be permitted to proceed directly in their own names to redress the derivative injuries allegedly suffered by TPO, but that TPO, acting through its board, retained the authority to pursue those claims. On appeal, the Sibling Shareholders assert that the trial court abused its discretion in declining to allow them to proceed in a direct action against Andrew to redress the derivative injuries allegedly suffered by TPO. Additionally, the Sibling Shareholders assert that the trial court abused its discretion in determining that TPO, acting through its board, is the proper party to prosecute any derivative claims on TPO's behalf. Finding no abuse of discretion, we affirm.

## Facts and Procedural History[2]

In the most recent appeal involving these same parties, our supreme court gave the following brief recitation of facts:

> [TPO] is a closely-held corporation headquartered in Westville, Indiana, and the Kesling family business. Andrew Kesling, President of TPO, owns fifty-one percent of TPO's voting stock. Collectively, Andrew's siblings Christopher (DDS, MS), Adam, and Emily Kesling own eleven percent.[3] In January 2010, the sibling minority shareholders filed, both individually and derivatively on behalf of TPO, a complaint against Andrew in the LaPorte Superior Court alleging wrongdoing causing a significant decrease in shareholder value. The trial court granted

---

[2] We held oral argument on July 18, 2017, in Indianapolis. We thank counsel for their excellent advocacy.

[3] The record indicates that there are a total of ten shareholders. Those shareholders who are not parties to the current litigation own approximately 38% of TPO's voting stock and 64.2% of its nonvoting stock.

TPO's motion to intervene, and pursuant to Ind. Code § 23-1-32-4, TPO's board of directors formed a special litigation committee [("SLC")]to investigate the derivative claims. After meeting thirty times and conducting forty interviews, the SLC ultimately recommended that only some derivative claims be pursued ….

*TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 988-89 (Ind. 2014) (footnote omitted).

[4] Specifically, in August 2011, the SLC issued a report containing its determinations that it was not in TPO's best interest to pursue most of the claims alleged in the complaint (hereinafter "the rejected claims") but that it was in TPO's best interest to pursue four of the claims (hereinafter "the remaining claims").[4] Thereafter, TPO moved to dismiss the rejected claims and moved for summary judgment as to the Sibling Shareholders' rights regarding the remaining claims. As to the remaining claims, TPO asserted that those claims involved alleged injuries to TPO and therefore are derivative claims. TPO cited the well-established rule that individual shareholders may not maintain actions at law in their own names to redress injuries to the corporation, and further that the closely held corporation exception to that

---

[4] In their complaint, the Sibling Shareholders alleged that Andrew had acted wrongfully in a number of ways, such as exchanging currency at a loss to the company, failing in corporate governance—specifically, failing to implement counseling or sensitivity training at TPO, which resulted in several sexual-harassment claims and litigation—improperly charging travel and entertainment expenses to TPO, taking improper advances on royalty and patent payments, and using TPO funds for personal expenses. The Sibling Shareholders claimed that Andrew's actions caused economic loss to the company and its shareholders. The SLC rejected most of the claims but found that it was, in fact, in TPO's best interest to pursue claims regarding Andrew's breach of fiduciary duty to TPO based on royalty and patent payments, using TPO's funds for personal expenses, and failing in corporate governance. Appellants' App. Vol. 2 at 122-24.

general rule enunciated in *Barth v. Barth*, 659 N.E.2d 559, 560 (Ind. 1995), should not apply here. Thus, TPO asserted that the Sibling Shareholders should not be discretionarily permitted by the trial court to pursue the remaining claims in a direct action against Andrew. TPO designated in support of its motion a heavily redacted version of the SLC report based upon TPO's desire to protect privileged attorney-client communications and attorney work product potentially contained within the report. The parties agreed to stay the proceedings while the Sibling Shareholders pursued a motion to compel the full, unredacted SLC report. This discovery dispute led to several more years of litigation, which was finally resolved by our supreme court, and the case was remanded to the trial court in 2014. *See TP Orthodontics*, 15 N.E. 3d at 998.[5]

[5] On remand, and in accordance with our supreme court's directive, the trial court ordered TPO to produce a modified redacted version of the SLC report. The Sibling Shareholders then filed their response to TPO's motion to dismiss and for summary judgment in November 2015. The Sibling Shareholders challenged the SLC's determinations by designating evidence and affidavits to support their assertion that SLC failed to conduct a good-faith investigation of their claims and that the SLC members were not disinterested. The Sibling Shareholders also argued that the trial court "can and should allow" them to

---

[5] As observed by our supreme court, the current litigation is only the most recent in a series of intrafamilial disputes. *See TP Orthodontics, Inc.,* 15 N.E.3d at 988 n.1 (citing *Kesling v. Kesling*, 967 N.E.2d 66 (Ind. Ct. App. 2012) (siblings challenged transfer of TPO shares from their father to Andrew), *trans. denied*; *Kesling v. Kesling*, 546 F. Supp. 2d 627 (N.D. Ind. 2008) (father contested same transfer of TPO shares); *Kesling v. Kesling*, 955 N.E.2d 781 (Ind. Ct. App. 2011) (siblings intervened in Andrew's divorce proceedings challenging disposition of assets of other corporations closely held by the Kesling family), *trans. denied*).

bring the remaining claims in a direct action pursuant to the *Barth* exception to the general rule regarding derivative claims, and that TPO failed to meet its burden to show that the exception should not apply. Appellants' App. Vol. 2 at 143, 154.

[6] On May 16, 2016, the trial court entered its order granting TPO's motion to dismiss and/or for summary judgment. Specifically, the trial court determined that the Sibling Shareholders did not meet their burden to show that the members of the SLC were not disinterested or did not conduct a good-faith investigation pursuant to Indiana Code Section 23-1-32-4(c), and therefore the SLC's findings were conclusive as to the rejected claims and those claims were dismissed.[6] The trial court further concluded that all the Sibling Shareholders' remaining claims were for the benefit and on behalf of TPO and thus derivative. The court acknowledged that it had the discretion to permit the Sibling Shareholders to proceed directly against Andrew on the remaining claims pursuant to the *Barth* exception; however, the court concluded that the *Barth* exception did not apply and that the Sibling Shareholders would not be allowed to proceed in a direct action against Andrew regarding the remaining claims but

---

[6] There is ample caselaw regarding the SLC process codified by Indiana Code Section 23-1-32-4 (discussed more thoroughly in section 2 of this opinion) and the presumption that the decision of an SLC is conclusive against the shareholder attempting to bring a claim, unless the shareholder can prove that the SLC was not disinterested or that its determination was not made after a good-faith investigation. *See generally In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571, 575 (Ind. 2006). However, in this appeal, the Sibling Shareholders challenge the trial court's judgment only as it pertains to their right to pursue the remaining claims directly, and while they "still have concerns about the SLC investigation, they do not challenge the [rejected claims'] dismissal in this appeal." Appellants' Br. at 18 n.3; *see also* Appellants' Br. at 15 n.1 (conceding that they "are not seeking to resurrect" the rejected claims).

that TPO, as a board, retained the authority to pursue those derivative claims on TPO's behalf.[7] Upon TPO's motion, and finding no just reason for delay, the trial court entered final judgment on December 15, 2016. This appeal ensued.

## Discussion and Decision

[7] We begin by noting that the issues raised on appeal are much narrower than those considered by the trial court below. The Sibling Shareholders do not challenge the trial court's dismissal of the rejected claims, nor do they challenge the trial court's determination that the remaining claims asserted against Andrew are derivative, rather than direct in nature.[8] They maintain that, pursuant to our supreme court's decision in *Barth*, as shareholders of a closely held corporation, they should be permitted to pursue the remaining four derivative claims in a direct action against Andrew. In other words, the Sibling Shareholders seek to proceed directly in their individual names regarding the remaining claims to redress the derivative injury to TPO, and they argue that the trial court abused its discretion in entering summary judgment and

---

[7] Due to imprecise wording of the final paragraphs of the trial court's judgment, the Sibling Shareholders sought clarification as to who retained the authority to pursue the remaining claims against Andrew and redress the alleged injury to TPO. On September 27, 2016, the trial court issued an order clarifying that TPO, acting through its board, retained the authority to prosecute the remaining derivative claims. *See* Appellants' App. Vol. 2 at 40.

[8] Direct claims are claims to vindicate rights belonging to individual shareholders and typically involve claims to enforce a right to vote, compel dividends, prevent oppression or fraud against minority shareholders, inspect corporate books, and compel shareholder meetings. *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001). Derivative claims are brought to redress an injury sustained by, or enforce a duty owed to, a corporation. *Id*.

determining that they would not be permitted to do so. Additionally, they challenge the trial court's determination that TPO's board of directors is a proper party to prosecute the derivative claims on TPO's behalf.

## Section 1 – The trial court did not abuse its discretion in declining to apply the *Barth* exception here.

[8] The Sibling Shareholders assert that the trial court abused its discretion in entering summary judgment and declining to allow them to proceed by direct action against Andrew on the remaining derivative claims. We observe that a trial court's order granting summary judgment comes to us "cloaked with a presumption of validity." *Town of Lapel v. City of Anderson*, 17 N.E.3d 330, 332 (Ind. Ct. App. 2014) (citation omitted). On appellate review of the trial court's order, we construe all facts and reasonable inferences in favor of the nonmoving party to determine whether the moving party has shown, by way of designated evidence, that there is no genuine issue as to any material fact, such that it is entitled to judgment as a matter of law. *Id*. Where the dispute is one of law rather than fact, however, we apply a de novo standard of review to those materials designated to the trial court for summary judgment. *Id*. A trial court's findings on summary judgment aid our review by giving insight into the rationale for its decision, but they are neither required nor binding, and they do not change our standard of review. *Milbank Ins. Co. v. Ind. Ins. Co.*, 56 N.E.3d 1222, 1229 n.6 (Ind. Ct. App. 2016). We will affirm the trial court's entry of summary judgment if it can be sustained on any basis supported by the evidence. *Id*. The party that lost in the trial court bears the burden of

persuading us that the trial court erred. *Morris v. Crain*, 71 N.E.3d 871, 879 (Ind. Ct. App. 2017).

[9] Indiana recognizes the "'well-established general rule' that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation, even if the injury has the effect of impairing the value of their stock." *Barth v. Barth*, 693 N.E.2d 954, 957 (Ind. Ct. App. 1998) (citing *Barth v. Barth*, 659 N.E.2d 559, 560 (Ind. 1995)), *trans. denied*. However, Indiana recognizes a limited exception to the general rule preventing shareholders from maintaining actions in their own names and grants trial courts the discretion to permit a shareholder in a closely held corporation to bring a direct action to recover for injury to the corporation, even when such a claim would be derivative. Specifically, "in 1995 [our supreme court] held that a shareholder in a close corporation need not always bring claims of corporate harm as derivative actions. Rather, in such an arrangement, the shareholders are more realistically viewed as partners, and the formalities of corporate litigation may be bypassed." *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 236 (Ind. 2001) (citing *Barth*, 659 N.E.2d at 561 & n.6).

[10] Thus,

> [i]n the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially

> prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Barth*, 693 N.E.2d at 958 (quoting PRINCIPLES OF CORPORATE GOVERNANCE § 7.01(d) (AM. LAW INST. 1994)).[9]  Where these factors are not at issue, the court may allow a direct action in place of derivative action.  *See G & N Aircraft*, 743 N.E.2d 227 (allowing a direct action suit to be filed by shareholders in a closely held corporation where *Barth* factors posed no concern).  However, "the *Barth* court cautioned that the exception [does] not abrogate the rule" and "it is important to keep in mind the principles which gave rise to the rule requiring derivative actions will sometimes be present in litigation involving closely-held corporations." *Hubbard v. Tomlinson*, 747 N.E.2d 69, 72 (Ind. Ct. App. 2001) (quoting *Barth*, 659 N.E.2d at 562).

[11]  While a trial court's decision regarding application of the *Barth* exception is clearly reviewed on appeal only for an abuse of discretion, the question remains as to how we square the abuse of discretion standard of review with the summary judgment standard.  Specifically, the parties here disagree as to who has the burden to establish the applicability (or nonapplicability) of the *Barth* exception to the facts presented.  The Sibling Shareholders argue that, based upon the summary judgment standard, TPO as the summary judgment movant

---

[9] The parties agree that TPO meets the definition of a "closely held corporation," *see Barth*, 659 N.E.2d at 562 n.5 (A closely held corporation "is one which typically has relatively few shareholders and whose shares are not generally traded in the securities market.")

has the burden to present evidence on each of the *Barth* factors and establish that there is no genuine issue of material fact that the exception does not apply. TPO counters that because the general rule is that shareholders may not bring a direct action in their own names to redress derivative claims, the Sibling Shareholders have the burden to present evidence to establish that the *Barth* exception *does* apply. We agree with TPO.

[12] We find the procedural framework for raising an affirmative defense, such as the statute of limitations defense, in the summary judgment context to be conceptually analogous. In *V. Ganz Builders & Development Co. v. Pioneer Lumber, Inc.,* 59 N.E.3d 1025, 1032 (Ind. Ct. App. 2016), *trans. denied* (2017), we discussed that when a statute of limitations defense is asserted, the party asserting the defense has the burden to show that the action was commenced outside the statutory period. Only when the party asserting the defense makes such showing properly does the burden shift to the other party to establish facts in avoidance of the defense. *Id*; *see also Abbott v. Bates*, 670 N.E.2d 916, 923 (Ind. Ct. App. 1996) (recognizing that a summary judgment nonmovant asserting an affirmative defense has the burden to designate evidence in response to summary judgment from which the trial court can infer the elements of the defense).

[13] Here, it is undisputed that the Sibling Shareholders' remaining four claims against Andrew are derivative claims alleging injuries to TPO and thus, as a general rule, they may not be pursued by direct action. Because the Sibling Shareholders are essentially raising a defense/exception to the general rule of

how derivative claims are pursued, they have the burden to present facts showing that the limited exception to the rule applies. Only after the Sibling Shareholders have made such a showing would the burden shift to TPO to designate facts in avoidance of the exception.

[14] We find further support for TPO's position in the language of Section 7.01(d) of the American Law Institute's *Principles of Corporate Governance* as adopted by *Barth*. We read section 7.01(d) as clearly placing the burden on a shareholder who wishes to bring a derivative claim by direct action to prove that the lawsuit comes within the exception to the general rule prohibiting shareholders from maintaining actions at law in their own names to redress an injury to the corporation. Specifically, as noted earlier, that section provides that the trial court may, in its discretion, allow a derivative claim to proceed by direct action only if it finds that to do so "*will not* (i) unfairly expose the corporation to a multiplicity of actions, (ii) materially prejudice the interests of creditors, or (iii) interfere with a fair distribution of recovery among all interested persons." PRINCIPLES OF CORPORATE GOVERNANCE § 7.01(d) (AM. LAW INST. 1994) (emphasis added). It is counterintuitive to think that the corporation, here TPO, would have the burden to show that a direct lawsuit "*will not*" implicate the section 7.01(d) factors because the corporation's position would be precisely the opposite. Rather, the plain language of section 7.01(d) places the burden on the shareholders advocating for the exception, here the Sibling Shareholders, to prove that a direct action *will not* implicate the policy concerns enunciated by

the section 7.01(d) factors.[10] Thus, even in the summary judgment context, and regardless of which party is the movant, a shareholder who wishes to circumvent the general rule has the burden to demonstrate that no genuine issue of material fact remains as to the applicability of the *Barth* exception.[11] The Sibling Shareholders have failed to meet that burden here.

[15] Indeed, a balance of the *Barth* factors and the relative interests involved supports the trial court's discretionary decision to decline to allow the Sibling Shareholders to proceed directly/individually on the four remaining derivative claims. First, the Sibling Shareholders have failed to present sufficient facts to show that permitting a direct action will not unfairly expose TPO or Andrew to a multiplicity of actions. The undisputed facts indicate that TPO has a total of ten shareholders, only four of whom are involved in the current litigation. The claims here allege injury to TPO and thus injury not only to the three Sibling Shareholders but also to the six additional shareholders (other than Andrew) who are not parties to this litigation. The Sibling Shareholders simply postulate

---

[10] *See Lightner v. Lightner*, 266 P.3d 539, 548 (Kan. Ct. App. 2011) (holding that trial court has no discretion to permit shareholders to pursue derivative claims in direct action unless shareholders can prove that corporation is closely held and that direct action *will not* implicate section 7.01(d) factors).

[11] The Sibling Shareholders rely solely on language used by another panel of this Court in *Cutshall v. Barker*, 733 N.E.2d 973, 983 (Ind. Ct. App. 2000), to support their contention that TPO had the summary judgment burden to demonstrate that the *Barth* exception does not apply. We note that *Cutshall* was not a summary judgment case, and we further find the unique factual and procedural history in *Cutshall* to be distinguishable and inapposite. Our decision in *Marcuccilli v. Ken Corp.*, 766 N.E.2d 444, 451 (Ind. Ct. App. 2002), although also not a summary judgment case, is more on point. In *Marcuccilli*, we affirmed the trial court's dismissal of the shareholder plaintiffs' direct action against the corporation, stating that "[t]he minority shareholders made no attempt to plead any of the policy considerations [enunciated in *Barth*] that would favor a direct, rather than a derivative action." Therefore, the court held that it was the plaintiffs' burden to plead and prove the applicability of the *Barth* exception.

that there are no outstanding litigation threats, but they have not shown that permitting them to proceed directly will not unfairly expose TPO and Andrew to multiple lawsuits regarding the same or similar conduct.

[16] Next, there is no evidence that a direct action by the Sibling Shareholders will not materially prejudice the interests of creditors of the corporation. Permitting direct recovery when the action is properly a derivative action fails to protect corporate creditors (because the proceeds of such action go to the plaintiffs) and avoids the legal ordering of creditors and investors. Our supreme court noted in *Barth* that "because a corporate recovery in a derivative action will benefit creditors while a direct recovery by a shareholder will not, the protection of creditors principle could well be implicated in a shareholder suit against a closely-held corporation with debt." 659 N.E.2d at 562. The Sibling Shareholders have presented only bald assertions, not facts, to show that the protection of creditors principle will not be implicated here.

[17] Finally, and we think most significantly, the Sibling Shareholders have not established that a direct action will not interfere with a fair distribution of recovery among all interested persons. Again, it is undisputed that there are six shareholders (other than Andrew) whose interests would not be protected if the Sibling Shareholders were allowed to proceed and recover damages from Andrew directly and individually. The trial court was not required to accept as credible the Sibling Shareholders' unenforceable "pledge" that "any recovery

they receive will be rolled back into the company" such that there is no danger to the rights of the nonparty shareholders. Appellants' App. Vol. 2 at 173.[12]

[18] Notably, cases in which the *Barth* exception has been discretionarily applied by a trial court to allow plaintiffs to proceed directly on derivative claims have generally involved closely held corporations with fewer shareholders than in the instant case. *See G & N Aircraft*, 743 N.E.2d 227 (plaintiff one of three shareholders); *W & W Equip. Co. v. Mink*, 568 N.E.2d 564 (Ind. Ct. App. 1991) (plaintiff one of three shareholders, and the only shareholder injured), *trans, denied*. In sum, under the facts presented here, we cannot say that the trial court's decision declining to allow the Sibling Shareholders to bring the remaining derivative claims in a direct action constituted an abuse of discretion.

## Section 2 – The trial court did not abuse its discretion in determining that TPO, acting through its board of directors, is a proper party to prosecute the remaining claims against Andrew on TPO's behalf.

[19] Even if they are not permitted to pursue a direct action against Andrew on the remaining claims, the Sibling Shareholders assert that the trial court abused its

---

[12] Although there appeared to be some confusion at oral argument, to be clear, when a trial court permits a minority shareholder in a closely held corporation to pursue a derivative claim by direct action, any recovery obtained would be an "individual recovery" with the benefits inuring "solely" to that shareholder and not to the corporation or to any nonparty shareholders. *See Barth*, 659 N.E.2d at 562. In other words, the Sibling Shareholders would get to keep any monetary damages obtained as a result of the remaining derivative claims if permitted to proceed in their own names by direct action against Andrew. This is as opposed to the derivative claims being pursued by derivative action, in which the recovery would go to the corporation as a whole and not to the individual shareholders. *See PricewaterhouseCoopers, LLP v. Massey*, 860 N.E.2d 1252, 1257 (Ind. Ct. App. 2007), *trans. denied*.

discretion in determining that TPO, acting through its board of directors, is a proper party to prosecute those claims on TPO's behalf. They complain that TPO's board, which is "entirely under the control of Andrew … has neither the independence nor the motivation to pursue the claims against him," and thus putting the board in charge of the litigation is akin to putting the fox in charge of the henhouse. Appellants' Br. at 26. The Sibling Shareholders maintain that while the disinterested SLC could have brought the remaining claims on TPO's behalf, the SLC is no longer in existence. They argue that, absent the SLC, they should be the ones to pursue the remaining claims derivatively on TPO's behalf and that TPO's board is definitely not a proper party to do so. In short, the Sibling Shareholders assert that they "should control the litigation unless and until TPO appoints a [new] disinterested committee to manage the claims." Reply Br. at 13.

[20] We are not unsympathetic to the Sibling Shareholders' concerns. However, the Sibling Shareholders cite no authority, and there appears to be none, to support their assertion that the trial court abused its discretion in concluding that TPO's board is a proper party to prosecute the remaining claims. Indiana's Business Corporation Law, Indiana Code Section 23-1-32-1, discusses generally the right of a shareholder to commence a derivative proceeding to enforce the rights of the corporation. Indiana Code Section 23-1-32-4 provides that a board of directors may establish an SLC to investigate such claims and determine whether the corporation has a legal or equitable right or remedy and whether it is in the corporation's best interests to pursue that right or remedy, or to dismiss

a proceeding that seeks to assert that right or remedy on the corporation's behalf. Specifically, that section provides in relevant part:

> (a) Unless prohibited by the articles of incorporation, the board of directors may establish a committee consisting of three (3) or more disinterested directors or other disinterested persons to determine:
>
> (1) whether the corporation has a legal or equitable right or remedy; and
>
> (2) whether it is in the best interests of the corporation to pursue that right or remedy, if any, or to dismiss a proceeding that seeks to assert that right or remedy on behalf of the corporation.
>
> (b) In making a determination under subsection (a), the committee is not subject to the direction or control of or termination by the board. A vacancy on the committee may be filled by the majority of the remaining members by selection of another disinterested director or other disinterested person.
>
> (c) If the committee determines that pursuit of a right or remedy through a derivative proceeding or otherwise is not in the best interests of the corporation, the merits of that determination shall be presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding with respect to such right or remedy, unless such shareholder can demonstrate that:
>
> (1) the committee was not "disinterested" within the meaning of this section; or
>
> (2) the committee's determination was not made after an investigation conducted in good faith.

Ind. Code § 23-1-32-4. The official comments to this section further explain:

> Because (a) the rights and remedies enforced in a derivative proceeding belong to the corporation, not the shareholder plaintiff, and (b) a corporation's rights and remedies are among its "business and affairs" to be "managed under the direction of" the board of directors, IC 23-1-33-1(b), **the [Business Law Survey] Commission believed that the decision whether and to what extent to investigate and prosecute corporate claims, like other questions of corporate policy and management, should in most instances be subject to the judgment and control of the board**. This section, which has no [Revised Model Business Corporation Act] counterpart, was added to establish procedures by which disinterested directors or other disinterested persons designated by the board can evaluate whether the corporation has a right or remedy and, if so, whether it is in the best interests of the corporation to pursue it.

*Id* (emphasis added).

[21] Contrary to the Sibling Shareholders' assertions, there is nothing in the above statute or its commentary that prohibits a corporate board from controlling litigation on behalf of the corporation after an SLC has determined that pursuit of a right or remedy is in the corporation's best interests. In fact, the language seems to contemplate exactly that scenario. Indeed, the establishment of a disinterested committee in the first place is optional, not mandatory. *See* Ind. Code § 23-1-32-4 (cmt. a). It appears that once this optional procedure is implemented and the committee performs its function of evaluating the claims and submitting its presumably conclusive recommendation, the committee's

purpose would be fulfilled, and it is the corporate board that may then assume control of the litigation of any viable claims at that point.

[22] In support of the trial court's conclusion that TPO's board is a proper party to control the litigation, TPO points to cases that state generally, "when a corporation suffers injury, either from corporate insiders or … from a third party, it is the corporate entity—not the individual shareholders—who retains the cause of action." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 646 (7th Cir. 2006) (citing *Scott v. Anderson Newspapers, Inc.*, 477 N.E.2d 553, 563 (Ind. Ct. App. 1985)). Moreover, our supreme court has explicitly recognized that Indiana Code Section 23-1-32-4 expresses a strong preference for board management and direction of whether to pursue a legal right on a corporation's behalf. *See In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571, 575 (Ind. 2006).

[23] Again, we understand the Sibling Shareholders' concerns with having TPO's board quarterback the litigation of the remaining claims. However, due to the serious nature of the claims against Andrew that were approved by the SLC, we trust that TPO's board is aware that it has not only the authority to pursue the remaining claims, but also the responsibility to do so in the best interests of the corporation. Moreover, the Sibling Shareholders are not without remedy in the event that TPO's board shirks this responsibility.

[24] Directors of Indiana corporations owe fiduciary duties to their corporations and are accountable to the corporation and its shareholders if they breach their

duties of good faith, ordinary care, and fair dealing. Ind. Code § 23-1-35-1. To establish personal liability for a director, the plaintiff must plead particularized facts that the director's breach or failure to perform the duties of the director's office constitutes "willful misconduct or recklessness." Ind. Code § 23-1-35-1(e); *In re ITT Derivative Litig.*, 932 N.E.2d 664, 669 (Ind. 2010). Thus, as noted by TPO, "[i]f the directors of TPO 'sit on' the Remaining Claims, or settle them 'for a nominal amount'" as feared by the Sibling Shareholders, the Sibling Shareholders would have claims against the members of the board of directors individually. TPO's Br. at 37.

[25] Finally, we would note the protection offered by Indiana Code Section 23-1-32-3(a), which provides in relevant part that "[a] proceeding commenced under this chapter may not be discontinued or settled without court approval." Hence, the trial court here will remain actively involved in the ultimate and fair resolution of the four remaining claims against Andrew. Based upon the record before us, we have not been given sufficient reason to second-guess the trial court's discretionary decisions in this case. Therefore, the trial court's entry of summary judgment and its order clarifying that TPO's board is a proper party to pursue the remaining claims are affirmed.

[26] Affirmed.

Baker, J., concurs.
Barnes, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher K. Kesling, DDS, MS, Adam Kesling and Emily Kesling, individually and derivatively on behalf of TP Orthodontics, Inc.,

*Appellants-Plaintiffs,*

v.

Andrew C. Kesling, individually and as Trustee of the Andrew C. Kesling Trust dated March 28, 2001, and the Andrew C. Kesling Trust dated March 28 2001,

*Appellees-Defendants,*

and

Court of Appeals Case No. 46A03-1701-MI-64

TP Orthodontics, Inc.,

*Intervenor-Appellee*

**Barnes, Judge, dissenting with separate opinion.**

[27]   I respectfully dissent.  I am fully aware that the law generally mandates derivative actions in circumstances such as these.  However, I believe this case, on these facts, in this legal posture, compels that the exception to that rule articulated by our supreme court should apply.  *See Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995).

[28]   I take a slightly different stance with the standard of review than the majority.  Because I believe the trial court clearly had to resolve disputed facts and did so entirely on a paper record, we should owe no deference to the trial court's decision.  *See GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001).  Also, under the ordinary summary judgment standard, our review should be de novo.  *See Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2016) (stating de novo standard of review for summary judgment rulings).

[29]   I simply see the elements of *Barth* and the facts here in a different light than my colleagues.  The danger that allowing a direct action will expose TPO to a

multiplicity of suits, to me is negligible, if not non-existent. There are six other shareholders, besides Andrew and the Sibling Shareholders, who might bring such actions. One of these, David Kesling, is, and always been, aligned with Andrew. *See* Appellant's App. Vol. II p. 181. The other five shareholders all were notified in 2010 that this lawsuit was filed. Since that time, not one has participated in, or expressed any desire to participate in, the suit. Given the passage of time and the non-interest shown, coupled with the fact the statute of limitations would bar most, if not all, new actions,[13] this *Barth* factor weighs in favor of the Sibling Shareholders.

[30] Second, I find no evidence in the record that TPO's creditors would be materially prejudiced by a direct action. The corporation is solvent, and there is no hint of financial difficulty. *See id.* at 214. This lawsuit practically confirms that fact—it is unlikely there would be such concern over a faltering entity. The American Law Institute ("ALI"), drafters of Section 7.01(d) of the Principles of Corporate Government, which the *Barth* court adopted verbatim, stated, "In general, when a direct action is brought on behalf of the entire class of injured shareholders *and the corporation's solvency is not in question*, there is less reason to

---

[13] The four claims that the SLC recommended pursuing against Andrew were based on breach of fiduciary duty, conversion, constructive fraud, and breach of contract. The statute of limitations for breach of fiduciary duty and conversion is two years. *See* Ind. Code § 34-11-2-4; *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010) (breach of fiduciary duty), *trans. denied*; *Estate of Verdak v. Butler Univ.*, 856 N.E.2d 126, 133 (Ind. Ct. App. 2006) (conversion). The statute of limitations for constructive fraud is six years. *See* I.C. § 34-11-2-7(4); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998), *trans. denied*. A breach of contract claim ordinarily is governed by a ten-year statute of limitations. *See* I.C. § 34-11-2-11. Even this claim, however, might be governed by a shorter statute of limitations. *See Whitehouse v. Quinn*, 477 N.E.2d 270, 273-74 (Ind. 1985) (noting that applicable statute of limitations is governed by the nature or substance of the cause of action, not its stated legal theory).

insist that the action be brought derivatively." PRINCIPLES OF CORPORATE GOVERNMENT § 7.01, cmt. e (emphasis added). Moreover, "If necessary, the court can still protect creditors of the corporation by directing that adequate provision be made for the firm's creditors out of any recovery." *Id.* Given TPO's solvency and the trial court's ability to fashion remedies to protect creditors in the event TPO is insolvent, I believe this factor weighs in favor of permitting the Sibling Shareholders to pursue a direct action.

[31]     Third, there is no indication that permitting a direct action will interfere with a fair distribution of recovery among all interested persons. The five "unaligned" shareholders do not and have not expressed any interest in this matter, and the Sibling Shareholders have executed sworn affidavits promising to return any money recovered to TPO. Although my colleagues question the credibility of the Sibling Shareholders in this regard, I believe that as the case is now situated, in the context of a summary judgment motion, the court was required to accept the affidavits as credible. *See Hughley*, 15 N.E.3d at 1003-04 (holding that even "self-serving" affidavits filed in response to a summary judgment motion must be accepted as credible). In any event, having now made that representation, I believe the trial court would be able to fashion an equitable remedy holding the Sibling Shareholders to that representation if their direct lawsuit was successful. Ultimately, trial courts have broad powers of equity to fashion flexible remedies in cases involving close corporations. *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 244 (Ind. 2001).

[32] Most importantly, allowing a direct action here is entirely consistent, in my view, with the policy reasons for allowing such actions. The Sibling Shareholders are squarely against the Board and Andrew, which, to charitably characterize it, have been stonewalling these claims for approximately seven years. The Board is clearly *not* disinterested. In 2006 Andrew, then holding 51% of TPO's voting stock, removed his father, Pete, and one of the Sibling Shareholders, Chris, from the seven-member Board.[14] At that time, three other persons were added to the Board, in addition to Andrew, David, and two pre-existing members. Andrew will continue to control 51% of the voting stock. It is my belief that our supreme court and the ALI have plainly spoken as to a key factor in allowing a direct action: "whether the corporation has a disinterested board that should be permitted to consider the lawsuit's impact on the corporation." *Barth*, 659 N.E.2d at 562 (citing PRINCIPLES OF CORPORATE GOVERNMENT § 7.01, cmt. e). It is clear to me that TPO's Board is not disinterested and should not, and given past history, cannot be entrusted to pursue the claims brought by the Sibling Shareholders and recommended for further prosecution by the SLC.

[33] I vote to reverse the grant of summary judgment in favor of TPO with respect to not allowing the Sibling Shareholders to pursue a direct action against Andrew on the four claims recommended for prosecution by the SLC, and to remand with directions that the Sibling Shareholders be permitted to do so.

---

[14] The Board had been increased from five to seven members two years earlier.